

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-2006

# USA v. Jones

Precedential or Non-Precedential: Precedential

Docket No. 05-3001

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Jones" (2006). *2006 Decisions.* Paper 783.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/783

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  05-3001

UNITED STATES OF AMERICA

v.

CHRISTOPHER D. JONES

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 03-cr-00201)
District Judge: Honorable Malcolm Muir

Argued April 21, 2006

Before: SLOVITER and AMBRO, <u>Circuit Judges,</u>
and DuBOIS,[*] <u>District Judge</u>

[*] Honorable Jan E. DuBois, Senior District Judge for the
Eastern District of Pennsylvania, sitting by designation.

(Opinion filed June 28, 2006)

Stephen F. Becker, Esquire (Argued)
Shapiro & Becker
114 Market Street
Lewisburg, PA   17837

     Counsel for Appellant

Thomas A. Marino
  United State Attorney
George J. Rocktashel (Argued)
  Assistant United States Attorney
Office of the United States Attorney
240 West Third Street, Suite 316
Williamsport, PA  17701

     Counsel for Appellee

---

OPINION  OF  THE  COURT

---

AMBRO, <u>Circuit Judge</u>

Christopher D. Jones appeals his drug conviction and sentence entered in the United States District Court for the Middle District of Pennsylvania.  He contends, <u>inter alia</u>, that his decision to proceed <u>pro se</u> was not knowing, intelligent, and voluntary.  We agree, vacate his conviction, and remand to the District Court for a new trial.

## I. Facts and Procedural History

### A. Background

In July 2003, Pennsylvania State Trooper John Latin observed Jones driving at over 80 miles per hour on an interstate highway. Trooper Latin attempted to get Jones to stop, but he refused to comply and led Latin and other officers on a 14-mile chase. During the chase, officers observed Jones throw a powdery substance and a brown paper bag out the window of his car. The officers eventually forced Jones off the road, and when he got out of his car they observed white powder fall from his lap. They also observed white powder in the interior of the car, discovered it at the various places along the highway where Jones threw items out the window, and after obtaining a search warrant, recovered hundreds of small plastic baggies and an electronic scale from the car. A forensic examiner later determined that the white powder was cocaine, with a total weight of slightly more than 100 grams.

### B. Waiver of Right to Counsel

Jones was indicted on a single count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He pled not guilty and the District Court appointed counsel. In December 2003, Jones wrote a letter to the District Court Judge requesting new counsel. He contended that his appointed counsel had not communicated with him about the

case, misrepresented the charges and possible sentence, and refused to file motions Jones wanted him to file. In January 2004, the District Court held an ex parte hearing at which Jones stated that he did not wish his appointed counsel to be removed. Two months later, however, Jones renewed his objections, and his appointed counsel filed a request to be relieved of his duties. The District Court granted this request and appointed the Federal Defender's Office to represent Jones, which in turn designated attorney Edward Rymsza.

Rymsza subsequently filed a motion to withdraw as counsel, and at an ex parte hearing in August 2004, he informed the Court that Jones wished to proceed pro se. Rymsza stated that the attorney-client relationship had been "rocky" and that Jones had repeatedly questioned Rymsza's dedication to the case. Rymsza also noted that Jones wanted to pursue trial strategies he could not condone, and that Jones had been "very adamant in his desire to proceed pro se or not have me on the case." The following colloquy then occurred between the Court and Jones:

> THE COURT: [D]o you wish Mr. Rymsza to continue to represent you in this case?
>
> DEFENDANT JONES: No, I don't.

4

THE COURT: Do you wish to proceed as your own attorney?

DEFENDANT JONES: Either that or be appointed another counsel.

THE COURT: I'm asking you whether you wish to proceed with your own attorney. You have already had two attorneys in this case, and we just simply can't keep appointing counsel after counsel after counsel in a given case.

Do you wish to proceed on your own as your own attorney?

DEFENDANT JONES: If the Court would not allow me to obtain new counsel, then yes, I would like to proceed pro se.

THE COURT: Well, I'm going to ask you questions about whether or not you should represent yourself and what your knowledge of the law is and that kind of thing,

5

but I'll make the decision after I hear your views later today or possibly tomorrow as to whether we will appoint new counsel for you.

. . .

THE COURT: All right, now have you ever studied law?

DEFENDANT JONES: No.

THE COURT: Do you understand that if you represent yourself you are completely on your own?

DEFENDANT JONES: I believe that would be the case. I would ask that the counsel [sic] appoint someone to sit in for legal advice in case I want to be cross examined — or examined, that somebody would be there to question me.

THE COURT: Well, we do not appoint counsel in a stand-by position to give you legal advice. The only reason we appoint counsel, if you try this case yourself, is that if the situation gets so bad that we no longer can permit you to try it yourself.

Assume you violate some rule or something like that or some order. Then stand-by counsel would come in and take over the case. But stand-by counsel is not appointed to give you advice. Do you understand that?

DEFENDANT JONES: Yes.

THE COURT: All right. Do you understand that if you represent yourself you would be responsible for the presentation of your case, and you must abide by the rules of evidence at the trial? Do you understand that?

DEFENDANT JONES: Yes.

THE COURT: Are you familiar with the Federal Rules of Evidence and Criminal Procedure?

DEFENDANT JONES: Somewhat I am, yes.

THE COURT: You are somewhat?

DEFENDANT JONES: Somewhat, yes.

THE COURT: Do you still desire to represent yourself rather than have Mr. Rymsza — Mr. Rymsza represent you?

DEFENDANT JONES: Yes.

THE COURT: Is your decision entirely voluntary?

DEFENDANT JONES:

8

Yes.

The Court then asked Rymsza if, in his opinion, Jones' decision to proceed pro se was knowing, intelligent, and voluntary, and Rymsza stated that it was. The Court concluded that Jones' waiver of his right to counsel was indeed knowing, intelligent, and voluntary, and granted Rymsza's motion to withdraw.

After a short recess, the Court informed Jones that it had decided to appoint new counsel, but noted that this was "the third attorney" he would have and "if you disagree with the next one, we will not appoint additional counsel for you." The Court also informed Jones that new counsel could not be ready to try the case before October 2004, and asked if that was acceptable. Jones replied:

> DEFENDANT JONES: Your Honor, . . . there would be no way to proceed pro se with counsel that could directly examine me if I was going to want to testify on my own behalf.
>
> THE COURT: I don't understand what you're asking me. You want to act as your attorney except you want some attorney to

examine you when you are on the stand?

DEFENDANT JONES: Yes.

THE COURT: We don't operate under those — like that. If you represent yourself, you can get on the stand and give your story. So we will only appoint new counsel for you after this third one to act as stand-by counsel.

Do you — do you object if we put this case on the October list?

DEFENDANT JONES: No. Your Honor, I would rather proceed pro se, but I would — I would accept that if it was on the October list.

THE COURT: You mean you would rather proceed pro se despite the disadvantages of

10

representing yourself . . . than have
us appoint new counsel for you?  Is
that what you're saying?

DEFENDANT    JONES:
Yes.

As a result of this colloquy, the District Court concluded
that Jones "said he wants to proceed pro se and I — I think he
seems capable — certainly capable of doing that.  And I will
make a finding that he knowingly, intelligently and voluntarily
waives his right to counsel and desires to proceed pro se."

## C.    Conviction and Sentence

Jones represented himself and was convicted.  The
District Court appointed new counsel to represent Jones at
sentencing.  Before trial, the Government filed an information
pursuant to 21 U.S.C. § 851(a) stating that it intended to seek an
enhanced sentence based on two prior felony drug convictions.
Under U.S.S.G. § 4B1.1, these convictions resulted in a "career
offender" designation that increased Jones' Sentencing
Guidelines range from 57-71 months to 262-327 months in
prison.  Jones filed a motion for a downward departure on the
ground that his designation as a career offender overrepresented
his criminal history.  The District Court denied this motion and
sentenced Jones to 264 months in prison, followed by 6 years of
supervised release and a $100 special assessment.  Jones

11

appealed.[1]

## D.    Appeal

Jones raises several issues on his appeal.  First, he contends that his decision to proceed pro se was not knowing, intelligent, and voluntary, and that the District Court failed to conduct the proper inquiry to assure that the waiver of his right to counsel was effective.  Second, he argues that the District Court erred in refusing to grant a mistrial based on two alleged trial errors: (1) Trooper Latin's testimony (upon cross-examination by Jones) that the arresting officers knew Jones had a criminal record; and (2) two statements by the prosecutor that, in Jones' view, were adverse comments on his refusal to testify in his own defense.  Third, he contends that his sentence (as enhanced by the § 4B1.1 career offender provision) is unreasonable because it does not comport with the sentencing factors set forth in 18 U.S.C. § 3553(a).  Finally, he asserts that because his prior convictions resulted in an enhanced statutory maximum under 21 U.S.C. § 841(b)(1)(C), the Government should have charged them in the indictment and proved their existence to the jury beyond a reasonable doubt.

---

[1]   The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231, since it concerns offenses against the laws of the United States.  We have jurisdiction over the appeal under 28 U.S.C. § 1291.

As explained below, Jones' waiver of his right to counsel was ineffective, and thus we must vacate his conviction and remand to the District Court for a new trial. We have no cause, therefore, to reach any of Jones' other challenges to his conviction and sentence.

## II. Waiver of Right to Counsel

It is well established that the Sixth Amendment protects a defendant's right to have counsel for his defense, and his right to refuse counsel and represent himself. Faretta v. California, 422 U.S. 806, 814, 820 (1975); United States v. Stubbs, 281 F.3d 109, 116 (3d Cir. 2002). A defendant who wishes to represent himself "must be allowed to make that choice, even if it works ultimately to his own detriment." United States v. Peppers, 302 F.3d 120, 130 (3d Cir. 2002) (internal quotation marks omitted). Before deciding a defendant's request to proceed pro se, however, "the trial court [bears] the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." Id. at 130-31; Stubbs, 281 F.3d at 118 (same); see also United States v. Welty, 674 F.2d 185, 187 (3d Cir. 1982) ("Since the decision to proceed pro se involves a waiver of the defendant's sixth amendment right to counsel, the district court . . . has the responsibility of ensuring that any decision by the defendant to represent himself is intelligently and competently made.").

13

In conducting this inquiry, "[p]erfunctory questioning is not sufficient." Welty, 674 F.2d at 187. Rather, a District Court must engage in a "penetrating and comprehensive examination of all the circumstances." Peppers, 302 F.3d at 131 (internal quotation marks omitted); Stubbs, 281 F.3d at 118 (same); Welty, 674 F.2d at 189 (same).[2] The purpose of the inquiry is to establish that the defendant: (1) has "clearly and

---

[2] A "penetrating and comprehensive examination" of the defendant's request to proceed pro se is not required in every court. See, e.g., Ferguson v. Bruton, 217 F.3d 983, 985 (8th Cir. 2000) (per curiam) (holding that "a specific warning on the record of the dangers and disadvantages of self-representation is not an absolute necessity in every case if the record shows that the defendant had this required knowledge from other sources" (internal quotation marks omitted)); United States v. Singleton, 107 F.3d 1091, 1098 (4th Cir. 1997) (noting that a District Court's "failure to conduct a formal inquiry [is not] per se reversible error. . . . [T]he trial judge is merely required to determine the sufficiency of the waiver from the record as a whole rather than from a formalistic, deliberate, and searching inquiry." (internal quotation marks omitted)); see also United States v. Bell, 901 F.2d 574, 577 n.2 (7th Cir. 1990) (noting "a split in the circuits over the extent of inquiry necessary before allowing an accused to waive his right to counsel," and citing our decision in Welty as among those cases that "require either a 'searching inquiry' or a special hearing to ensure that the defendant understands the dangers of proceeding pro se" (citing McDowell v. United States, 484 U.S. 980, 980 (1987) (White, J., dissenting from denial of certiorari))).

14

unequivocally" asserted his desire to represent himself; (2) "understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved"; and (3) is competent to stand trial. Peppers, 302 F.3d at 132, 134.[3] To satisfy these criteria, the defendant must be "specific[ally] forewarn[ed] of the risks that foregoing counsel's trained representation entails," id. at 133, and he must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835; Stubbs, 281 F.3d at 118 (same).

There is, of course, "no talismanic formula for the [district] court's inquiry." Peppers, 302 F.3d at 135; see Welty, 674 F.2d at 189 (noting that "we do not require a detailed listing of advice similar to that mandated for guilty plea proceedings conducted pursuant to Rule 1 of the Federal Rules of Criminal Procedure"). Nonetheless, in addition to the basic inquiry noted above, our Court has noted that a district court must inform a defendant who wishes to proceed pro se that: "he will have to conduct his defense in accordance with the Federal Rules of Evidence and Criminal Procedure, rules with which he may not be familiar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that

---

[3] Jones' competence to stand trial is not at issue.

15

the effectiveness of his defense may well be diminished by his dual role as attorney and accused." Welty, 674 F.2d at 188. Indeed, in Peppers we set out model questions derived from the Federal Judicial Center's Bench Book for United States District Court Judges, which provide a "useful framework" in deciding whether a defendant knowingly and voluntarily wishes to proceed pro se. 302 F.3d at 136-37.[4]

---

[4] These questions are as follows:

> 1. Have you ever studied law?
> 2. Have you ever represented yourself in a criminal action?
> 3. Do you understand that you are charged with these crimes: [state the crimes with which the defendant is charged]?
> 4. Do you understand that the U.S. Sentencing Commission has issued sentencing guidelines that will be used in determining your sentence if you are found guilty?
> 5. Do you understand that if you are found guilty of the crime charged in Count 1, the Court must impose an assessment of $___, and could sentence you to as many as ___ years in prison and fine you as much as $ ___? [Ask defendant this question for each count of the

16

indictment or information.]

6. Do you understand that if you are found guilty of more than one of these crimes, this Court can order that the sentences be served consecutively, that is, one after another?

7. Do you understand that if you represent yourself, you are on your own? I cannot tell you — or even advise you — as to how you should try your case.

7a. Do you know what defenses there might be to the offenses with which you are charged? Do you understand that an attorney may be aware of ways of defending against these charges that may not occur to you since you are not a lawyer? Do you understand that I cannot give you any advice about these matters?

8. Are you familiar with the Federal Rules of Evidence?

8a. Do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that, in representing yourself, you must abide by those rules?

9. Are you familiar with the Federal Rules of Criminal Procedure?

9a. Do you understand that these rules govern the way a criminal action is tried in federal court? Do you understand that you must follow these rules?

10. Do you understand that you must proceed by calling witnesses and asking them questions, and that, except when and if you yourself testify, you will not be permitted to tell the jury matters that you wish them to consider as evidence?

10a. Do you understand that it may be much easier for an attorney to contact potential witnesses, gather evidence, and question witnesses than it may be for you?

11. I must advise you that in my opinion a trained lawyer would defend you far better than you could defend yourself. I think it unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I strongly urge you not to try to

Our review of a defendant's decision to proceed <u>pro se</u> is plenary, <u>see</u> <u>Stubbs</u>, 281 F.3d at 113 n.2, and we "must indulge every reasonable presumption against a waiver of counsel." <u>Buhl v. Cooksey</u>, 233 F.3d 783, 790 (3d Cir. 2000). When a waiver is deemed ineffective (<u>i.e.</u>, not knowing, intelligent, and voluntary), there is no harmless error review, and the conviction must be vacated and the case remanded for a new trial. <u>Stubbs</u>, 281 F.3d at 117, 121.

---

> represent yourself.
>
> 12. Now, in light of the penalties that you might suffer if you are found guilty, and in light of all of the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer?
>
> 13. Are you making this decision freely, and does it reflect your personal desire?
>
> 14. Do you have any questions, or do you want me to clarify or explain further anything that we have discussed here?

<u>Peppers</u>, 302 F.3d at 136-37 (citing Fed. Judicial Ctr., <u>Bench Book for U.S. Dist. Ct. Judges</u> § 1.02 (4th ed. 2000)) (footnotes omitted; bracketed material in original).

### III. Analysis

### A.    Clear and Unequivocal Waiver

Much as we appreciate the difficult balancing required of district judges in cases like this one, we cannot conclude that Jones clearly and unequivocally waived his right to counsel. To review, Jones stated several times that he only wished to proceed pro se if the Court would not appoint another attorney to replace Rymsza. The Court did not approve new counsel at the outset, and examined Jones on his desire and ability to represent himself. The Court also told Jones that "[t]he only reason we appoint counsel, if you try this case yourself, is that if the situation gets so bad that we no longer can permit you to try it yourself," standby counsel would step in. The Court informed Jones that standby counsel could not give him legal advice or examine him if he testified.[5]

---

[5] The District Court took an overly restrictive view of the role of standby counsel in this manner. We have expressly approved arrangements in which standby counsel advises a pro se defendant, makes opening or closing statements, and questions the defendant if he testifies in his own defense. See United States v. McFadden, 630 F.2d 963, 969 & n.12 (3d Cir. 1980); see also United States v. Bertoli, 994 F.2d 1002, 1019 (3d Cir. 1993) (noting that standby counsel "must be available if and when the accused requests help," "must be ready to step in if the accused wishes to terminate his own representation," may "explain and enforce the basic rules of courtroom protocol

The Court later agreed to appoint a new attorney. Jones asked whether counsel could examine him on the stand if he wished to proceed pro se, and the Court told him no and asked if he would object if the case were listed for trial in October. Jones replied, "No. Your Honor, I would rather proceed pro se, but I would — I would accept that if it was on the October list." The Court then asked if Jones wanted to proceed pro se "despite the disadvantages of representing yourself . . . than have us appoint new counsel for you," and Jones replied that he did. The Court considered the matter closed and decided that Jones thereafter could proceed pro se.

Particularly since we are to "indulge every reasonable presumption against a waiver of counsel," Buhl, 233 F.3d at 790, we cannot conclude that Jones clearly and unequivocally wanted to proceed pro se instead of having the Court appoint full counsel. Jones repeatedly asked for full counsel or, if he was to proceed pro se, for standby counsel to advise him and question him if he testified. The District Court understated the role of standby counsel, and mentioned that new counsel could not try the case until October. Jones replied that, although he "would rather proceed pro se," he would accept new counsel to try the case in October. We believe it is reasonable to presume that Jones was expressing his desire to represent himself with the active assistance of standby counsel, but since the District

to the accused," and serves to "overcome routine obstacles that may hinder effective pro se representation")

21

Court would not allow that, he would accept the appointment of new counsel to try the case. Instead, the District Court took Jones' statement to be a request to proceed pro se regardless of the limitations on standby counsel. The trial judge did not, however, pursue this matter by asking additional questions; rather, he simply asked Jones if he wanted to proceed pro se rather than have full counsel appointed.

The District Court apparently presumed that Jones' comment that he "would rather proceed pro se" meant that, despite the limitations the District Court placed on standby counsel, Jones still wanted to represent himself. This choice is not clear from the record, however, and we do not indulge presumptions that support a waiver of counsel. As noted, we think it equally likely that Jones meant he would rather represent himself with the active assistance of standby counsel, but was willing to accept the appointment of full counsel instead. This backdrop does not allow us to conclude that Jones' waiver was clear and unequivocal.

## B.     District Court's Colloquy

We also observe that the District Court's formal inquiry of Jones regarding his decision and ability to proceed pro se skipped several important bases. As noted above, this Court requires a penetrating and comprehensive evaluation of the defendant's reasons for proceeding pro se and his capacity to do so, which must include a detailed, on-the-record explanation of

the various problems and pitfalls the defendant may encounter. As we explained in Peppers, the District Court's inquiry must establish that the defendant understands "all risks and consequences associated with his decision for self-representation," and "even [if] the colloquy skips just one of the [relevant] factors," it fails to establish that the waiver is knowing, intelligent, and voluntary. 302 F.3d at 135.[6]

---

[6] The District Court conducted its colloquy with Jones ex parte, without the Government's participation. Although we have found no authority prohibiting such an approach, we believe it inadvisable. As the Seventh Circuit noted in Bell, the Assistant United States Attorney serves a useful function in assuring that a district court's colloquy is sufficient. See 901 F.2d at 578 ("As an officer of the court, the AUSA has some responsibility to ensure, as far as may be reasonably possible, the integrity of the proceedings. To this end, the AUSA should have assisted the magistrate by calling to his attention the possible inadequacy of [the] warnings."). Indeed, the prosecutor has a strong self-interest in doing so, for if the colloquy is inadequate, the prosecutor will be forced to retry the case.

We believe the prosecutor's presence would have been especially advisable in this case. The District Court conducted its colloquy at a hearing convened to consider Attorney Rymsza's motion to withdraw as Jones' counsel. We of course have no question that Rymsza acted in good faith and desired to benefit his soon-to-be-former client as much as possible under the circumstances, but that is beside the point. The fact remains that, on such a motion, Rymsza's interests were opposed to those of Jones. Thus, the District Court's question to Rymsza

The District Court's colloquy with Jones established six things: (1) Jones did not wish to have Rymsza represent him; (2) he wished to proceed pro se if he could not have a different lawyer; (3) he had never studied law; (4) he could have standby counsel, but standby counsel could not give him advice or question him if he took the stand in his own defense; (5) he would be responsible for "the presentation of [his] case"; and (6) he was "somewhat" familiar with the Federal Rules of Evidence and Criminal Procedure. These issues are, of course, part of the "penetrating and comprehensive examination of all the circumstances" we require.

But other important issues escaped examination. The District Court did not, for example, inquire whether Jones understood the possible defenses available to him, nor did it explain that it could not give him any assistance. It did not discuss any of the potential problems that an incarcerated defendant might encounter in obtaining evidence and locating and questioning witnesses. Upon hearing that Jones was only "somewhat" familiar with the Rules of Evidence and Criminal Procedure, the Court did not ask any follow-up questions to determine the extent of his understanding, and whether he knew that these rules prohibited him from simply telling the jury his

whether he believed Jones knowingly, intelligently, and voluntarily waived his right to counsel was misdirected; that question would have been better addressed to the Government's attorney.

24

story.   Moreover, the Court never informed Jones that representing himself was inadvisable.

The District Court also never informed Jones of the magnitude of the sentence he could receive as a career offender under the Sentencing Guidelines (which nearly quintupled the sentence he would otherwise receive), or of the fact that his prior drug convictions raised the statutory maximum punishment to 30 years in prison.  The Government argues that the possible sentence was discussed at Jones' initial appearance before a Magistrate Judge in July 2003 (more than a year before the colloquy that is our focus), and thus Jones knew what he faced.  As explained above, we reject the approach of some of our sister Circuits that allows examination of the record as a whole in an attempt to divine what the defendant understands about the consequences of proceeding pro se.  A complete, on-the-record colloquy with the defendant, one that assures he understands all the risks of proceeding without an attorney at the time he makes that choice, is in our view a significantly better way of protecting the right to counsel than the whole-record approach.

Nonetheless, we have on occasion looked beyond the District Court's colloquy to determine whether a defendant understood the charges and sentence, most notably in United States v. McFadden, 630 F.2d 963 (3d Cir. 1980).  McFadden involved a defendant who "unquestionably" sought to "employ complaints against counsel as a dilatory tactic in order to

25

postpone trial, raise a Speedy Trial Act claim, or await possible death or unavailability of prosecution witnesses." Id. at 972. We recognized that in those circumstances the defendant was not entitled to challenge the effectiveness of his waiver where the District Court engaged in a lengthy examination of his reasons for proceeding pro se and the record revealed that he had been informed numerous times, by the Court and appointed counsel, of the charges, possible sentence, available defenses, evidence, and the limitations he would face if he refused to accept counsel's advice. In Welty (decided by a panel that included two of the judges who considered McFadden), we explained that McFadden "represents the furthest that this court has gone in upholding a defendant's waiver of counsel," and noted that the unique circumstances of that case — coupled with the fact that McFadden was appointed standby counsel who gave advice, examined McFadden on the stand, and made opening and closing statements — presented a limited circumstance in which we might look beyond the colloquy. Welty, 674 F.2d at 192-93. We explained, however, that McFadden provides "no authority" for relieving the District Court of its usual obligation to conduct a detailed and comprehensive inquiry. Id. at 193.[7]

_____

[7] In Stubbs, we stated that, in a case where the charges and potential punishment were formally explained to the defendant on at least three separate occasions, the trial judge need not have reminded the defendant of them again during the waiver-of-counsel colloquy. See 281 F.3d at 120 n. 9 (citing McFadden, 630 F.2d at 972). The Government relies on this

There is no suggestion that Jones sought to proceed <u>pro se</u> for an improper purpose, such as to delay trial or beget a Speedy Trial Act violation. Moreover, to the extent it is relevant, Jones was not permitted the active assistance of standby counsel. <u>See</u> <u>Welty</u>, 674 F.3d at 193 (distinguishing <u>McFadden</u>, <u>inter alia</u>, on the ground that "the Court in [that case], unlike the court in the instant case, appointed a . . . lawyer to serve as standby counsel[,] . . . [who] sat at the counsel table with McFadden, was available to give McFadden any legal advice he needed, examined McFadden when he took the stand, and made opening and closing statements on McFadden's behalf"). <u>McFadden</u> does not, therefore, control this case.

Even if we were inclined to look beyond the District Court's colloquy, we note that the record contains no evidence that Jones was ever directly informed of the punishment he faced. At his initial appearance in July 2003, 13 months before the District Court questioned him about his desire to proceed <u>pro</u>

_____

statement for the expansive proposition that because the charges and possible sentence a defendant faces are usually entered into the record at the initial appearance, there is no need to include these as part of the District Court's examination. Our decision in <u>Stubbs</u> held that numerous other problems with the District Court's colloquy in that case rendered the defendant's waiver ineffective, and thus the cited footnote was <u>dicta</u>. Also, as is clear from the discussion below, Jones' case is distinguishable from the situation in <u>Stubbs</u> (and the situation in <u>McFadden</u>).

27

se, the only mention of the potential punishment was a short statement by the prosecutor to the Magistrate Judge, in Jones' presence, that Jones was a "career criminal" who would face a statutory maximum of 30 years in prison and a minimum Guidelines sentence of 21 years. The Magistrate Judge did not attempt to ascertain whether Jones understood this sentence, and apparently it was never mentioned again. Indeed, there is evidence in the record that Jones did not understand his possible punishment: in his December 2003 letter to the District Court requesting that his first attorney be replaced, Jones stated (erroneously) that "the actual highest possible sentence I c[an] receive [is] 20 yrs. (240 mths.)."

In any event, the prosecutor's single mention of the potential punishment at a hearing more than a year before Jones expressed his desire to proceed pro se was insufficient, as a matter of law, to demonstrate that he was aware of the magnitude of punishment he faced. We require a detailed colloquy with the defendant explaining the various factors relevant to his decision to represent himself, at the time he seeks to waive counsel, precisely to avoid such problems. The knowing, intelligent, and voluntary nature of a defendant's decision to waive his fundamental right to counsel should not hinge on fuzzy inferences about his understanding of crucial subjects gleaned from comments made by others at hearings months or even years before.

\*   \*   \*   \*   \*

28

All of these matters are necessary components of the penetrating and comprehensive examination of a defendant's request to waive counsel. Although no scripted recital is required for this inquiry, we do require that all of the subjects covered in the model questions set forth in Peppers be fully explored in the inquiry, to the extent those subjects are relevant.[8] The colloquy here did not satisfy this standard.

## IV.

We conclude that, on the record before us, Jones did not express a clear and unequivocal desire to proceed pro se,

---

[8] There is, of course, no need to explain factors that are irrelevant to the defendant's circumstances, and the District Court is not required to probe the defendant's understanding of a particular issue more deeply if his initial answer to a question regarding that issue is sufficient to satisfy the requirements of the District Court's inquiry. See, e.g., Peppers, 302 F.3d at 134 (noting that the District Court must inquire into the circumstances "as thoroughly as needed to satisfy itself that the defendant understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved" (internal quotation marks omitted)). Here, however, the District Court did not ask about many factors that were relevant to Jones, and did not follow up on questions to which Jones gave ambivalent or tentative answers (such as his statement that he was only "somewhat" familiar with the rules of trial).

29

nor can we determine that his waiver of the right to counsel was knowing, intelligent, and voluntary.  Regardless of the strength of the evidence against Jones, we are constrained to vacate his conviction and remand to the District Court for a new trial.