

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-2009

# USA v. Chamberlain

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1064

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Chamberlain" (2009). *2009 Decisions.* Paper 1372.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1372

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-1064

UNITED STATES OF AMERICA

v.

SCOTT CHAMBERLAIN,
                                                    Appellant

APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS,
DIVISION OF ST. THOMAS/ST. JOHN
(D.C. Crim. No. 04-cr-00189-001)
District Judge:  Honorable James T. Giles

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2009

Before: BARRY, HARDIMAN, and COWEN, Circuit Judges

(Opinion Filed: May 13, 2009)

OPINION

BARRY, Circuit Judge

    Appellant Scott Chamberlain was convicted of attempted robbery of the United

States, in violation of 18 U.S.C. § 2114, and grand larceny, in violation of 14 V.I.C. §

1083(1).  On appeal, Chamberlain alleges a variety of errors.  Because we find that the District Court did not ensure that Chamberlain's decision to waive his right to counsel and proceed *pro se* was knowing, intelligent, and voluntary, we will vacate the judgment of conviction and remand for further proceedings.

## Factual Background

On November 30, 2004, Chamberlain attempted to rob a post office and a jewelry store in St. Thomas, Virgin Islands.  As to the former, Chamberlain approached a postal employee, handed her a plastic bag, demanded that she fill it with money, and brandished a gun.[1]  He repeated his demand, but the employee, apparently in shock and afraid, did not do as instructed.  Chamberlain left the post office.  The employee, and another employee who witnessed the events, contacted the police and described the putative robber as a white man wearing a white t-shirt and a blue bathing suit.

Chamberlain next proceeded to a jewelry store where he pretended to examine an expensive watch, and then fled the store with the watch.  He was pursued and apprehended by store employees, and soon detained by the police.  An officer, noting the similarity between Chamberlain's appearance and the description of the man who attempted to rob the post office, brought Chamberlain to the post office for the purpose of identification.  With Chamberlain handcuffed in the back of a police car, the two postal

---

[1] The gun, it would later be discovered, was fake.

employees positively identified him as the putative robber.[2]

Chamberlain was arrested and charged with attempted robbery and grand larceny. On May 19, 2006, approximately two weeks before his trial was set to begin, he filed a complaint about his then-current counsel with the Virgin Islands Bar Association and, shortly thereafter, filed a motion for new counsel with the District Court. On June 6, 2006, the morning of trial, Chamberlain pressed his motion before the Court. The Court required him to choose between proceeding *pro se* or going forward with his then-current counsel. Chamberlain elected to represent himself, with counsel serving as stand-by counsel.[3] The jury convicted him on both counts, and he was sentenced to concurrent terms of 66 months imprisonment. On appeal, he alleges a variety of errors.[4] We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[2] Chamberlain testified at trial to a different version of events: he claimed that he had no involvement whatsoever with the attempted robbery of the post office, and was the victim of erroneous eyewitness identification. With respect to the jewelry store incident, he claimed that he was simply taking the watch out of the store to show it to his employer, who had promised to purchase him a watch as a reward for a job well done.

[3] At trial, stand-by counsel questioned Chamberlain during his testimony, gave the closing statement, and participated in the Rule 11 conference. Chamberlain conducted the rest of the trial himself.

[4] Chamberlain argues that his conviction should be vacated for the following reasons: (1) insufficiency of the evidence; (2) error in the jury instructions; (3) the District Court's refusal to appoint an expert witness on the subject of the unreliability of eyewitness identification; and (4) the District Court's failure to ensure that he knowingly, intelligently, and voluntarily waived his right to counsel.

-3-

**Discussion**

Chamberlain claims that the District Court failed to ensure that his waiver of the right to counsel was knowing, intelligent, and voluntary. We have repeatedly discussed the framework and requirements for the waiver of the right to counsel.

> The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have Assistance of Counsel for his defense.' The Supreme Court has construed this to mean that 'the guiding hand of counsel' must be made available in criminal trials to those that can not afford to hire an attorney on their own. It is now clear, however, that the Sixth Amendment also guarantees the right of self-representation.

*United States v. Stubbs*, 281 F.3d 109, 116 (3d Cir. 2002) (internal citations omitted); *see also Faretta v. California*, 422 U.S. 806 (1975). "Our review of whether a defendant's waiver of counsel was knowing and intelligent is plenary as it involves only legal issues." *Stubbs*, 281 F.3d at 113 n.2.

For a defendant to waive his right to counsel, he "must clearly and unequivocally ask to proceed *pro se*." *Buhl v. Cooksey*, 233 F.3d 783, 790 (3d Cir. 2000) (internal citations omitted). If a defendant asks to proceed *pro se*, a district court must conduct a searching inquiry into his understanding of the intricacies and disadvantages of *pro se* representation.[5] *See, e.g.*, *United States v. Welty*, 674 F.2d 185, 188 (3d Cir. 1982) ("The

---

[5] A defendant must establish "good cause" before a court would be required to appoint new counsel. *See Stubbs*, 281 F.3d at 117 (noting that when a defendant "expresses a desire to either substitute counsel or proceed *pro se* on the eve of trial . . . . [t]he court must first determine if the accused can 'show good cause [for dismissing counsel], such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney. . . . [I]f good cause does exist, counsel should be dismissed

court . . . has the responsibility of ensuring that any choice of self-representation is made knowingly and intelligently, with an awareness of the dangers and disadvantages inherent in defending oneself.").  This inquiry, commonly known as a *Faretta* inquiry, is intended to ensure that a defendant's waiver of the right to counsel is knowing, intelligent, and voluntary.  *See, e.g.*, *Gov't of the V.I. v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995).

Because of the centrality of the right to counsel to our justice system, we "indulge every reasonable presumption against a waiver of counsel."  *Buhl*, 233 F.3d at 790.  Additionally, a *Faretta*-type error is structural, and requires automatic reversal.  *See, e.g.*, *United States v. Jones*, 452 F.3d 223, 230 (3d Cir. 2006) ("When a waiver is deemed ineffective (*i.e.*, not knowing, intelligent, and voluntary), there is no harmless error review, and the conviction must be vacated and the case remanded for a new trial.").

A waiver of the right to counsel "ought not [be] accept[ed] . . . absent a penetrating and comprehensive examination of all the circumstances."  *Stubbs*, 281 F.3d at 118-19 (internal citations and quotations omitted).  "Perfunctory questioning is not sufficient."  *Welty*, 674 F.2d at 187.  Indeed, "the defendant [must] be informed of *all* risks and consequences associated with his decision for self-representation."  *United States v.*

---

'even though it may necessitate continuing the trial'") (quoting *United States v. Welty*, 674 F.2d 185 (3d Cir. 1982)).

Because it is sufficiently clear to us that the *Faretta* inquiry here was deficient, *see infra*, we will not engage in a post hoc analysis of whether the purported conflict between Chamberlain and his then-current counsel was of such magnitude as to require new counsel, or whether the District Court properly forced him to choose between current counsel and proceeding *pro se*.

*Peppers*, 302 F.3d 120, 135 (3d Cir. 2002) (emphasis in original). In *Peppers*, we went so far as to publish a list of 14 questions, some with sub-parts, that provides a "useful framework for the court to assure itself that a defendant's decision to proceed *pro se* is knowing and voluntary." *Id.* at 136.

We went even further in *United States v. Jones*, unambiguously holding that "[a]lthough no scripted recital is required for [the *Faretta*] inquiry, we do require that *all of the subjects* covered in the model questions set forth in *Peppers* be fully explored in the inquiry, to the extent those subjects are relevant." 452 F.3d at 234 (emphasis added). In *Jones*, we analyzed the court's colloquy in detail, noting that it failed to:

> (1) "inquire whether [defendant] understood the possible defenses available;"
> (2) "explain that [the court] could not give [defendant] any assistance;"
> (3) "discuss any of the potential problems that an incarcerated defendant might encounter in obtaining evidence and locating and questioning witnesses;"
> (4) "ask any follow-up questions to determine the extent of [defendant's] understanding [about the Rules of Evidence and Criminal Procedure], and whether [defendant] knew that these rules prohibited him from simply telling the jury his story;"
> (5) "inform[] [defendant] that representing himself was inadvisable;"
> (6) "inform[] [defendant] of the magnitude of the sentence he could receive as a career offender under the Sentencing Guidelines."

*Id*. at 232. In light of these deficiencies, we could not find that the waiver of counsel was knowing, intelligent, and voluntary and, thus, vacated the judgment of conviction.

The colloquy that took place here is even more deficient than the one found lacking in *Jones*. After a discussion of Chamberlain's complaints about counsel, the

following exchange occurred:

> Defendant: Well, you offered [for me to represent myself], and I've
> accepted.
> Court: Your attorney is trained. You're there to assist in your
> representation, if you wish him to do this.
> Defendant: Yes.
> Court: I will not assist you if you choose to represent yourself.
> Defendant: Yes, I understand that, Your Honor.
> Court: Do you choose to represent yourself?
> Defendant: Yes, I do. And I choose to also have [counsel] assist me.

(App. 15-16.) Chamberlain then recited another litany of complaints against counsel. At

this point, the District Court terminated the colloquy, and proceeded to trial:

> Defendant: . . . So I had no choice but to file a grievance complaint against
> him and also to ask this Court to be an honorable Court and, under the
> circumstances, please give me a new attorney.
> And now, you know, here I am.
> Court: Here you are.
> Defendant: And I thank you for listening to me, and in making the offer you
> have here. I wish you would reconsider - -
> Court: 1:05.
> Defendant: - - to give me a lawyer - -
> Court: 1:05.
> Defendant: Thank you, Your Honor.
> [Defense Counsel]: Your Honor, before you adjourn, if I may, just for
> clarity on the record, all of this is against advice of counsel.
> Court: He is making his own decision. I'm sure he's thought about it. 1:05.

(*Id.* at 16-17.)

Thus, the District Court informed Chamberlain only that counsel was trained and

that the Court would not assist him at trial. None of the other requisite subjects was even

mentioned, let alone addressed in the manner envisioned by *Peppers* and *Jones*.[6]

Accordingly, we will vacate the judgment of conviction.

## Conclusion

The judgment of conviction will be vacated and this matter will be remanded for further proceedings. Given this disposition, we need not reach the numerous other issues raised on appeal. *See supra* note 4 and accompanying text.[7]

---

[6] The District Court failed to: (1) ask Chamberlain if he knew and understood the defenses available to him; (2) discuss the problems Chamberlain could have in obtaining evidence while incarcerated; (3) discuss, at all, Chamberlain's awareness of and knowledge about the Federal Rules of Evidence and Criminal Procedure; (4) recommend that Chamberlain not proceed *pro se*; (5) inform Chamberlain of the charges against him; (6) inform Chamberlain of the potential sentence he faced; (7) inquire into Chamberlain's background in law and knowledge of legal issues; (8) inform Chamberlain of the existence and effect of the Sentencing Guidelines; and (9) inform Chamberlain that he could not, except when testifying, simply tell the jury information and have it considered as evidence. *Cf. Peppers*, 302 F.3d at 136.

[7] We note, however, that were a new trial to be ordered, the District Court, on motion, should carefully consider whether Chamberlain is entitled to have the assistance of an expert witness as to reliability of eyewitness identifications generally and the problems associated with cross-racial identifications and "show-up" procedures specifically. *See, e.g.*, *United States v. Brownlee*, 454 F.3d 131 (3d Cir. 2006); *United States v. Stevens*, 935 F.2d 1380 (3d Cir. 1991); *United States v. Downing*, 753 F.2d 1224 (3d Cir. 1985).