**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-2601

———————

UNITED STATES OF AMERICA

v.

SHAWN CHRISTY,

                Appellant

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 3-18-cr-00223-001)
District Judge: Honorable Robert D. Mariani

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 18, 2024

Before: JORDAN, BIBAS and AMBRO, <u>Circuit Judges</u>

(Opinion Filed: February 12, 2024)

———————

OPINION[*]

———————

AMBRO, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

After going on a cross-country crime spree, Shawn Christy was arrested, charged with twelve federal counts, and sentenced to 240 months in prison. He now appeals from his conviction and sentence seeking to have his judgment vacated and a new trial or a new sentencing hearing ordered. For the reasons that follow, we affirm the District Court.

## I.        BACKGROUND

In the summer of 2018, Christy, a convicted felon and fugitive, committed multiple crimes across the country. He stole vehicles, firearms, and more, and threatened to kill numerous people, including then-President Donald Trump and Sarah Palin. Federal and state law enforcement embarked on a three-month manhunt through multiple states and Canada. Schools were temporarily closed, and a county district attorney required around-the-clock security. Christy was eventually arrested in September 2018 and charged with twelve federal counts.[1]

In January of 2019, Christy had begun filing *pro se* motions, all of which were denied or stricken because he was represented by counsel. In April 2019, his counsel moved for a competency evaluation, and the District Court ordered one, transferring Christy to a facility in New York for that purpose. Around the same time, Christy wrote a

---

[1] The charges were: 1) Threats against the President of the United States (18 U.S.C. § 871); 2-4) transmitting threatening communications (18 U.S.C. § 875(c); 5-6) interstate transportation of a stolen vehicle (18 U.S.C. § 2312); 7-8) interstate transportation of a stolen firearm (18 U.S.C. § 922(i)); 9-10) interstate transportation of a firearm while under information for a felony offense (18 U.S.C. § 922(n)); 11) fugitive in possession of a firearm (18 U.S.C. § 922(g)(2)); and 12) felon in possession of a firearm (18 U.S.C. § 922(g)(1)). *See* J.A. at 3-4, Judgment of Conviction (ECF 316); J.A. at 15-25, Superseding Indictment (ECF 28).

sealed letter to the Court requesting permission to represent himself. It held a hearing on September 3, 2019 to address both Christy's competency and his desire to represent himself. It concluded that he was competent. It then addressed the letters from Christy requesting to represent himself, repeatedly reminding him of the charges and potential sentences he was facing and repeating that, in the Judge's opinion, "a trained lawyer would defend [him] far better than [he] could defend [him]self." J.A. at 862. The Court found that Christy "knowingly and voluntarily waived [his] right to counsel" and granted his motion to represent himself with standby counsel. J.A. at 864.

Trial began on November 19, 2019. The Government presented nearly three dozen witnesses and the defense only four (including Christy). The jury returned a guilty verdict on all counts.

By the time of the sentencing hearing in July 2020, neither party had objected to the presentence report. Nonetheless, Christy raised numerous objections to it at the hearing; the only one that might have affected his Guidelines range, however, was to his enhancement of two levels for obstruction of justice by false testimony at trial. While he did not contest that he testified falsely, Christy argued that because his testimony was stricken from the record when he refused to answer cross-examination questions, the enhancement should not be applied. Construing this as an oral objection to the presentence report, the Court rejected it.

The following day, Christy's standby counsel filed a notice of appeal.

3

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231.    We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Our review of a district court's determination of whether a defendant may exercise his Sixth Amendment right to self-representation is plenary.  *United States v. Jones*, 452 F.3d 223, 229 (3d Cir. 2006).  So too is our review of its denial of a motion for judgment of acquittal, *United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011), as well as the denial of a motion for a new trial when that denial was based on the application of legal precepts.  *Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994).

We review a district court's factual determination of willful obstruction of justice, as well as factual determinations regarding criminal history calculations, for clear error, but any question regarding the legal interpretation of the Sentencing Guidelines gets *de novo* review.  *United States v. Powell*, 113 F.3d 464, 467 (3d Cir. 1997); *United States v. Audinot*, 901 F.2d 1201, 1202 (3d Cir. 1990).

We review the final sentence for reasonableness.  *United States v. Booker*, 543 U.S. 220, 261 (2005).  In this inquiry, the burden rests on the party challenging the sentence, and we give due deference to the sentencing court's judgment.  *United States v. Cooper*, 437 F.3d 324, 331 (3d Cir. 2006).

## III.    DISCUSSION

Christy raises several arguments for vacating his conviction and sentence. None is persuasive.

4

## A.

Christy argues that, because he "expressed in his competency evaluation that he did not know federal law" and the District Court "chose not to explore" that statement following the colloquy required by *Faretta v. California*, 422 U.S. 806 (1975), it erred in permitting him to represent himself. Christy's Br. at 15. This is not correct. Under *United States v. Peppers*, a defendant has a Sixth Amendment right to *waive* counsel, though this must follow a "penetrating and comprehensive examination of all the circumstances." 302 F.3d 120, 131 (3d Cir. 2002) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948)). But *Peppers* clearly states that a defendant's "technical legal knowledge, as such, [i]s not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* at 134-35 (quoting *Faretta*, 422 U.S. at 836). Our Court remanded for a new trial in part because the sentencing judge had *denied* the defendant self-representation based on his lack of legal training and expertise, not a valid basis for denying a defendant that Sixth Amendment right. *Id.* Christy, in a misunderstanding of the relevant law, claims the District Court should have done precisely that. We, of course, disagree.

The District Court thus properly permitted Christy to represent himself.

## B.

Christy next argues that his motion for judgment of acquittal should have been granted because the evidence to convict him on four counts related to transportation of stolen firearms and vehicles was "clearly inadequate" given that he had never been convicted in state court of the underlying thefts. Christy's Br. at 7, 17. But as the

5

Government points out, a prior state conviction for theft is not a required element under any of those statutes. The elements that are required for them—including mere *knowledge* that the vehicle/firearm was stolen *by someone*—were set out in jury instructions to which Christy did not object. Gov't's Br. at 37. Moreover, trial evidence proved beyond a reasonable doubt that he did steal the firearms and vehicles in question: the jury watched videotapes, read letters in his own handwriting, and heard a jailhouse confession caught on tape.[2]

The Court was correct to deny Christy's motion for judgment of acquittal.

## C.

Christy contends that the District Court wrongly denied his motion for a new trial because 1) the jury pool was "tainted by news reports at the start of the selection process, as admitted by a str[icken] juror, and [he] was stopped by the United States Marshals Service from news interviews"; 2) the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963); and 3) he "did not have enough time to review the [trial] transcripts" prior to filing his motions for acquittal and new trial. Christy's Br. at 18-21. There is no evidence in the record the jury was tainted, and as the District Court noted in denying Christy's motion on this ground, all 45 prospective jurors who had indicated during *voir dire* that they had "been told, heard, read, seen or learned anything about this case from any source whatsoever" had been "thoroughly vetted," some were stricken for

---

[2] Christy also states he was "blocked from attending [the] state court hearing" and "denied access to important legal information by the FBI, United States Marshals Service[,] and the Lackawanna County Prison." Christy's Br. at 16. However, he provides no further details about these allegations, nor a single citation to the record.

cause, and there was "no indication that a partial individual served on the chosen panel." J.A. at 87. And Christy provides no legal authority to suggest that being prevented from being interviewed compels a new trial. The *Brady* claim fails because, as the District Court noted in denying his new-trial motion, Christy fails to provide a single example of favorable evidence that was not provided to him in violation of *Brady*. Finally, the Court granted Christy's motion for trial transcripts to be produced at the Government's expense, and they were hand delivered to him on June 5, 2020. The Court then gave Christy additional time to file a supplemental brief in support of his motion. *Id.* But he declined to do so, stating that he had read the transcript in full and had "no more new information to add." J.A. at 93-94. That refutes any possible claim of prejudice from lack of access to the trial transcript.

The motion for new trial was correctly denied.

D.

Christy's last claims relate to his sentence: that it was harsh and excessive. A basis, he contends, is that because his testimony was stricken from the record, he should not have been assessed a two-level enhancement for obstruction under USSG § 3C1.1. Christy had made numerous false claims on the stand, some of which were obscene, and some of which he later admitted were false. He became combative and violent, screaming at the prosecutor questioning him, cursing at individuals at counsel table, and refusing to answer multiple questions on cross-examination. The Court warned him that his direct testimony would be stricken from the record if he persisted in refusing to answer cross-examination questions and gave him time to consult with standby counsel.

7

He decided to assert his Fifth Amendment right to refuse to answer questions, and the Court struck his testimony. While at sentencing he objected to the obstruction enhancement on the ground that "I thought if something got stricken from the record, it was a done deal[,]" J.A. at 883, Christy continues to provide no legal authority to support that contention. The Court confirmed that the false testimony was both material and willful, and it found that the presentence report was properly prepared. Given that Christy makes no argument that it was not—other than a novel and unsupported legal argument about stricken testimony—we agree.

Christy's next sentencing claim is that his criminal history category (V) over-represents the seriousness of his prior convictions and the likelihood that he will commit other crimes. As Christy acknowledges, we review this argument for plain error because he did not preserve his objection to his criminal history. He therefore bears the burden of persuasion, *United States v. Olano*, 507 US. 725, 734-35 (1993), and must demonstrate that the Court committed a plain error affecting his substantial rights. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). As the Government points out, Christy has two past assault convictions against government officials, has violated probation every time he has been sentenced to it, and has repeatedly threatened violence against others (including law enforcement officers). No reasonable person could conclude that this record fails to reflect a serious criminal history or a risk of recidivism. And, as the Government further points out, the Court placed little weight on Christy's criminal history when determining a fair sentence. Indeed, Judge Mariani explicitly stated, "[T]hese are prior convictions[.] I take note of them, but they are not central to the

8

decision I'm going to make here." J.A. at 966. Thus, we cannot conclude that the Court committed plain error in calculating and applying Christy's criminal history, much less that it affected his substantial rights.

Finally, Christy argues that his sentence was substantively unreasonable. Because it fell below the Sentencing Guidelines range (262 to 327 months), the sentence is presumptively reasonable. *United States v. Handerhan*, 739 F.3d 114, 124 (3d. Cir. 2014). Christy's conclusory statement that "no reasonable sentencing court would have imposed the same sentence on him for the reasons the district court stated," Christy's Br. at 24, does not overcome that presumption.

*     *     *     *     *

For these reasons, we affirm the District Court's conviction and sentence.