**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2773
_____

UNITED STATES OF AMERICA

v.

JEREMY NOYES,
                            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 08-cr-00055-001)
District Judge:  Honorable Sean J. McLaughlin
_____

Argued:  September 10, 2012
_____

Before: SCIRICA, ROTH and BARRY, <u>Circuit Judges</u>

(Opinion Filed: October 18, 2012)
_____

Lee Markovitz, Esq. (Argued)
Suite 1220
330 Grant Street
Pittsburgh, PA 15219

<u>Counsel for Appellant</u>

Rebecca R. Haywood, Esq. (Argued)
Mary M. Houghton, Esq.
Office of United States Attorney

700 Grant Street
Suite 4000
Pittsburgh, PA 15219-0000
        -and-
Christian A. Trabold, Esq.
Office of United States Attorney
17 South Park Row
Room A330
Erie, PA 16501-0000

*Counsel for Appellee*

_____

OPINION
_____

BARRY, Circuit Judge

Jeremy Noyes was charged in a four-count indictment with the transportation,
receipt, and possession of material depicting the sexual exploitation of a minor and the
transportation of obscene matter. He was convicted on all counts following a five-day
jury trial at which he represented himself, and was sentenced to 45 years' imprisonment,
the statutory maximum. He now appeals, arguing that his waiver of counsel was not
knowing, voluntary, and intelligent; that a five-level enhancement to his offense level
under U.S.S.G. § 2G2.2 should not have been applied; and that his sentence was
substantively as well as procedurally unreasonable. We will affirm.

**I.**

Because we write only for the parties, who are fully familiar with this case, we will
move directly to the issues before us. On September 9, 2008, a grand jury sitting in the

2

Western District of Pennsylvania returned a four-count indictment charging Noyes with transportation of child pornography (Count One), receipt of child pornography (Count Two), and possession of child pornography (Count Three), all in violation of 18 U.S.C. § 2252, as well as transportation of obscene matter (Count Four), in violation of 18 U.S.C. § 1462. Noyes rejected a plea offer, electing to proceed to trial.

On the morning that trial was to begin, Noyes entered the courtroom and presented a handwritten note to his court-appointed attorney, Michael Hadley, Esq. ("Hadley"), stating that he wished to proceed pro se. Thereafter, the District Court conducted an extensive colloquy with Noyes during which it thoroughly explained, among other things, the numerous risks in proceeding pro se, the numerous advantages of being represented by counsel, and the maximum penalties he was facing, and urged him to reconsider. Noyes confirmed time and again that he wished to represent himself. Ultimately, after Noyes stated that he was "absolutely certain" that he wished to represent himself and that he didn't see a need "to waste any more of the jury's time" (J.A. 59), the District Court permitted him to do so, with Hadley to serve as stand-by counsel. The jury returned a guilty verdict on all four counts after little more than one hour of deliberations.

A sentencing hearing was held on June 23, 2011. Noyes assured the District Court that he wished to continue to represent himself, and the Court permitted him to do so after another colloquy regarding the risks of proceeding without counsel. At the sentencing hearing, the Court ruled on the various objections to the presentence report ("PSR"), and

3

determined, as had the PSR, that the guideline range was 360 months to life, although the statutory maximum capped the potential sentence at 45 years. The Court imposed the statutory maximum sentence and explained why it did so. This appeal followed.

**III**.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Our review of Noyes's claim that the District Court's determination that his waiver of his right to counsel was knowing, voluntary, and intelligent is plenary. *United States v. Stubbs*, 281 F.3d 109, 113 n.2 (3d Cir. 2002). We review for plain error Noyes's challenge to the procedural reasonableness of his sentence and the five-level enhancement, neither of which was challenged before the District Court. *Johnson v. United States*, 520 U.S. 461, 467 (1997). Our review of the substantive reasonableness challenge to his within-guidelines sentence is highly deferential, and we will affirm the sentence "unless no reasonable sentencing court would have imposed the same sentence on [Noyes] for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

A. Waiver of Right to Counsel

It is well-established that the Sixth Amendment protects both a defendant's right to the assistance of counsel and his right to refuse counsel and proceed pro se. *Faretta v. California*, 422 U.S. 806, 814 (1975). "A defendant who wishes to represent himself 'must be allowed to make that choice, even if it works ultimately to his own detriment.'"

4

*United States v. Jones*, 452 F.3d 223, 228 (3d Cir. 2006) (citation omitted). Before permitting a defendant to proceed pro se, however, "the trial court [bears] the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *United States v. Peppers*, 302 F.3d 120, 130–31 (3d Cir. 2002). In order for a waiver of counsel to be considered knowing, intelligent, and voluntary, a district court must establish that the defendant: (1) has "clearly and unequivocally" expressed his desire to proceed pro se; (2) "understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved"; and (3) is competent to stand trial. *Id.* at 131, 132, 134.

In *Peppers*, we set out a number of model questions to serve as a guide to the district court in performing this inquiry. *Id.* at 136-37. There is no "scripted recital" or "talismanic formula" for this colloquy, *Jones*, 452 F.3d at 229, 234, but "if it appears that the defendant needs further explanation, or it is evident that the defendant does not comprehend what the court is saying or asking, the court will need to probe further." *Peppers*, 302 F.3d at 137; *see also Jones*, 452 F.3d at 234 n.8 (observing that the district court must "probe . . . more deeply" or "follow up on questions to which [the defendant gives] ambivalent or tentative answers").

Although purporting to do so, Noyes, who, we note, was studying medicine at the

5

time of his arrest, does not seriously argue, nor could he given this record, that his waiver of counsel was not knowing or intelligent or voluntary. His argument is more nuanced than that, and is bottomed on the fact, and fact it be, that when, during the extensive colloquy conducted by the District Court, he gave strange if not nonsensical answers to, at most, a few of the Court's questions, the Court should have but did not probe further to assure itself that he was competent to waive counsel. In support of our observation that his argument is "nuanced," Noyes does not argue that he was not competent to waive counsel and proceed pro se, but only that the Court's failure to follow up on those answers invalidates the waiver.

It is, of course, well-established that "[i]n order for a waiver of the right to counsel to be valid, the court must first assure itself that the defendant is competent to waive the right." *Gov't of the V.I. v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995). The question of competency "does not test one's legal competency to represent oneself." *Peppers*, 302 F.3d at 132 n.11. Rather, the degree of competency necessary to waive the right to counsel generally is viewed as being the same as the competency necessary to stand trial. *Godinez v. Moran*, 509 U.S. 389 (1993) (stating that the standard is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him") (citation omitted). In evaluating competency, "a mere routine inquiry . . . may leave a judge entirely unaware of the facts essential to an informed

6

decision that an accused has executed a valid waiver of his right to counsel." *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948). Accordingly, a trial court should be mindful of its duty to "probe . . . more deeply" or "follow up" if the defendant's responses to questioning raise a doubt as to his ability to make a valid waiver of counsel. *Jones*, 452 F.3d at 234 n.8. Of course, a court need not "make a competency determination in every case in which a defendant seeks . . . to waive his right to counsel." *Godinez v. Moran*, 509 U.S. 389, 401 n.13 (1993). However, "a competency determination is necessary . . . when a court has reason to doubt the defendant's competence." *Id.*

The District Court could, and, in an ideal world, perhaps should, have followed up with additional questions when Noyes gave his few strange answers. However, there is nothing else in this record that would or should have caused the Court, or causes us, to doubt that Noyes was competent to waive his right to counsel.[1] We will not invalidate that waiver.

### B. Enhancement Under U.S.S.G. § 2G2.2[2]

Noyes argues that the District Court erred in applying U.S.S.G. § 2G2.2(b)(3)(B),

---

[1] Although not directly relevant to the determination of Noyes's competency at the time he waived his right to counsel, we note that his then-competence was borne out by his performance at trial, at which he cross-examined the government witnesses with relevant questions, moved for a judgment of acquittal, and conducted direct examination of his own witnesses.

[2] We reject Noyes's claim that the District Court committed procedural error by not discussing rehabilitation. A sentencing court is not, of course, required to rigidly adhere to a script or mechanically check off each of the § 3553(a) factors. In any event, although the Court did not explicitly discuss rehabilitation, it surely had that in mind when it found that Noyes was "not capable of being deterred." (J.A. 855).

7

which provides for a 5-level increase if the offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." The commentary defines this standard to mean:

> any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. "Thing of value" means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.

U.S.S.G. § 2G2.2, cmt. n.1.

The enhancement was applied based on a series of e-mails and online chats between Noyes and an individual using the e-mail address julliettehodge@gmail.com ("Julliette"). On appeal, Noyes does not dispute that he *distributed* images of child pornography to Juliette during their chats and that he *received* images of child pornography. He contends, however, that the enhancement requires the government to prove that his *conscious purpose or object* in distributing the pornography was to receive other pornography from Julliette in return, and he asserts that "[n]owhere in those emails or chat transcripts is there any evidence of consideration or expectation, or that the emails were sent by either party on condition of a quid pro quo." (Appellant's Br. 17).

A purely gratuitous distribution of child pornography would not warrant the application of this enhancement, even if additional pornographic images were later received by the defendant. Here, however, the chat transcripts make clear that Noyes shared child pornography with Julliette with the conscious object of receiving additional

8

pornography in return. This quid pro quo arrangement, of the sort contemplated by the

enhancement, is demonstrated by the following chat transcript, which took place while

Noyes and Julliette were simultaneously exchanging e-mails containing images of child

pornography:

> me:[3]   yes I got the two
> Julliette:   look in your email
> me:    more?
> me:    nice
> Julliette:   Oke….:)
> me:    to show you theres nothing to be ashamed of ;)
> me:    here Ill send you some
> me:    :)
> me:    I was encrypting them
> . . . .
> me:    ok thats just a sample
> Julliette:   yes yes yes
> me:    do you like?
> Julliette:   baby!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!
> me:    ok I sent you some ;)
> Julliette:   got it
> . . . .
> me:    or did you send me more?
> me:    you want me to send more?
> Julliette:   send some other
> me:    I haven't sent mine yet gimme a sec theres a lot
> Julliette:   yes
> me:    you sent more?
> . . . .
> Julliette:   ok
> me:    got yours ;)
> . . . .
> me:    and why do you keep going offline
> me:    lil girls should be fair
> me:    since I sent so much :-p
> me:    can you send?

---

[3] In these chats, "me" refers to Noyes. Typographical errors have not been corrected.

Julliette:   I have more

. . . .

me:     thank you thank you thank you

me:     ooooo more

. . . .

Julliette:   does it make u happy?

Julliette:   yes yes yes

me:     SUCH A GOOD GIRL.

me:     more you sent more

Julliette:   ok

me:     that's all I ask

As evidenced by this transcript, Noyes distributed pornographic images from his

own collection with the expectation of receiving images in return from Julliette.  Indeed,

at one point Noyes makes the understanding of reciprocity explicit, asking Julliette to be

"fair" and send him more images "since [he] sent so much."  The District Court's

application of a five-level enhancement under §2G2.2, to which Noyes did not object,

was not plain error.

## C.  Substantive Reasonableness

Finally, Noyes argues that his 45-year sentence was substantively unreasonable.

On appeal, the "substantive reasonableness inquiry must be highly deferential" because

the "sentencing judge, not the court of appeals, is in a superior position to find facts and

judge their import under § 3553(a) in the individual case."  *United States v. Merced*, 603

F.3d 203, 214 (3d Cir. 2010).  That surely is true in a case such as this where the

experienced District Judge presided over a five-day trial; heard all of the overwhelming,

damning evidence; and watched and listened as Noyes vigorously testified that he had

10

been framed.

The sentence, a within-guidelines sentence, was undoubtedly harsh, but was not unreasonable. The District Court recognized that Noyes had no prior convictions, but found his crimes here were "extremely serious." (J.A. 852). It further found that Noyes demonstrated a "complete lack of remorse," which was especially troubling "given the level of depravity exhibited by [him]." (J.A. 855). With respect to potential sentencing disparities between similarly situated defendants, the Court made quite clear that Noyes's crimes were "so outrageously perverse and shocking as to be in a class of their own." (*Id.*) Finally, it emphasized that such a lengthy sentence was justified in the interests of general and specific deterrence.

> I do not think that I have ever seen a case where the sentencing goal of protection of the public figured more predominantly. Anyone who sat through this trial would realize that this defendant is the worst nightmare of every child's parent. The entirely credible and overwhelming evidence demonstrated that the defendant is a dangerous predatory sadist, who took pleasure in viewing the abuse of children and who was fully prepared to do so himself if given the opportunity.

(J.A. 854-55).[4]

---

[4] Noyes's argument that the District Court overstated the need to protect the public from him is without merit. The evidence presented at trial depicted Noyes's long-term goals for propagating "quality blood lines" by attempting to impregnate women and young girls beginning at the age of eight. Although Noyes had no history of *contact* offenses with minors, the evidence directly contradicts his assertion that he posed no danger to the public because his plans to sexually abuse small children were simply fantasies. In an e-mail describing plans for his sex slave society, Noyes explicitly stated, "This isn't fantasy, and it is possible." (J.A. 276). And in other conversations, he stated that because "[p]eople like us are hunted," he is forced to solicit child pornography through

11

The District Court's conclusions and application of the § 3553(a) factors are amply supported by the record. It surely cannot be said that the same sentence would not have been imposed, and for the same reasons, by any reasonable sentencing court.

**III.**

For the foregoing reasons, we will affirm the judgment of sentence.

---

hypothetical stories. That way, he explains, "I can later deny if someone says I'm sick etc. . . . I just say they're fantasy stories." (J.A. 284).