PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2835
_____

UNITED STATES OF AMERICA

v.

CHRISTOPHER BOOKER

                    Appellant
_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 05-cr-0170-05)
District Judge: Honorable John R. Padova
_____

Argued April 11, 2012
_____

Before: HARDIMAN, GREENAWAY, JR. and
GREENBERG, *Circuit Judges*.
_____

(Opinion Filed: July 2, 2012)

———————

Thomas A. Dreyer (argued)
6 Dickinson Drive
Building 100 – Suite 106
Chadds Ford, PA 19317
	*Counsel for Appellant Christopher Booker*

Zane David Memeger, United States Attorney
Robert Zauzmer, Assistant United States Attorney (argued)
Joseph T. Labrum III, Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
	*Counsel for Appellee United States of America*

———————

OPINION

———————

GREENAWAY, JR., *Circuit Judge*.

This case arises from the District Court's entry of judgment of conviction and sentence as well as the denial of Appellant Christopher Booker's pre-trial motion to suppress all post-arrest statements. Booker participated in a bank robbery with other co-conspirators. After being arrested on unrelated charges, he provided incriminating statements to the police. In a pre-trial motion, Booker asked the District Court to suppress these statements as violations of his *Miranda* rights. The District Court denied his motion. Before trial, Booker requested that he be allowed to proceed *pro se*. The

2

District Court conducted a hearing and warned him of the consequences of self-representation. While articulating the potential sentences facing him, the District Court erred and misstated one of the relevant mandatory minimums (stating it was five years and not twenty-five years). Booker was convicted of all charges, and he now appeals the District Court's judgment and sentence. For the reasons stated herein, we will vacate the District Court's judgment and sentence and remand the case to the District Court for a new trial.

## I. BACKGROUND

On June 15, 2004, Christopher Booker, Burnie Tindale and Jeryle Sowell robbed a Citizens Bank in Brookhaven, Pennsylvania. During the robbery, each man brandished a handgun and wore a stocking mask and gloves. Booker's specific role in the crime was to guard the front door. The men stole $52,935.75. This particular robbery was part of a series of similar bank robberies. Each of the other robberies entailed a similar method of operation and involved detailed dress rehearsals.

### *Miranda* Rights and Police Questioning

On October 24, 2004, Booker was arrested in Atlantic City, New Jersey on charges of unlawful possession of firearms and cocaine base. These charges are not related to the bank robbery offenses. While in custody for the drug and firearm charges, officers advised him of his *Miranda* rights, and he refused to waive them, invoking his Fifth Amendment right to remain silent and Sixth Amendment right to counsel. Booker was appointed counsel to represent him on those unrelated charges and was held in custody at the Atlantic City Correctional Facility (ACCF).

The Darby Borough Police, who were investigating Booker in connection with an unrelated case, spoke to him while at ACCF. They told Special Agent Roselli that Booker had expressed an interest in talking to the FBI about some bank robberies. Agent Roselli went to speak with Booker on November 30, 2004. He advised Booker of his *Miranda* rights and had him initial and sign a FD-395 advice and consent form. During this conversation, Booker made incriminating statements, discussing the Citizens Bank robbery, identifying his co-conspirators and providing details about his own role in the robbery.

Agent Roselli spoke with Booker again on December 8, 2004, where he again advised him of his *Miranda* rights and had him initial and sign the same FD-395 advice and consent form. Booker made additional incriminating statements about the robberies. Finally, on December 22, 2004, Agent Roselli travelled to ACCF to assume custody of Booker. He advised him of his *Miranda* rights, which Booker acknowledged and waived. Booker then made some voluntary statements in the car regarding the drug and firearm charges.

Proceeding *Pro se* and Conviction

Booker was charged with one count of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371 (Count One), one count of committing and aiding and abetting the commission of armed bank robbery, in violation of 18 U.S.C. §§ 2113(d) and (2) (Count Four), and one count of using and carrying a firearm during a crime of violence and aiding and abetting the use and carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and (2) (Count Five). Before trial, he moved to

4

suppress the oral statements that he made to Roselli on November 30, 2004, December 8, 2004 and December 22, 2004. The District Court conducted a hearing on the issue and denied the motion, finding that "Booker initiated his conversations with Special Agent Roselli by asking to speak to the FBI about bank robberies and by asking to meet with Special Agent Roselli again at the conclusion of their November 30, 2004 meeting." (App. at 142). The District Court then found that "Booker was given his *Miranda* rights and that Booker voluntarily, knowingly, and intelligently waived those rights." (App. at 142-43).

Booker filed a motion to proceed *pro se* on January 10, 2007. The District Court held an ex parte hearing on the motion, outside the presence of the Government. At the hearing, the Court warned Booker of the downside to self-representation and strongly encouraged him to consider proceeding with counsel. The Court advised him that the sentencing guidelines would be used to determine his sentence should he be found guilty and apprised him of the fact that his sentences could run consecutively. The Court then advised Booker of each charge that he faced and the potential sentences for each crime. Specifically, the Court stated that he faced a maximum of five years imprisonment for Count One, a maximum of twenty years imprisonment for Count Four and a five year mandatory minimum for Count Five (provided that he committed two or less prior crimes of violence).[1] Booker insisted that he be allowed to represent

---

[1] This is an incorrect articulation of the penalty scheme for Counts Four and Five. The maximum penalty for Count Four was twenty-five years, not twenty years as the District Court stated. Although our review of the record indicates that the

5

himself.[2]   The District Court granted Booker's motion to proceed *pro se* and allowed him to retain previous counsel (Mr. Ingram) as standby counsel.

On February 1, 2007, a jury found Booker guilty of Counts One, Four and Five.  He was sentenced to sixty months of imprisonment on Count One; 262 months of imprisonment on Count Four; and 300 months of imprisonment on Count Five (to run consecutive to the 262 months for Counts One and Four).

---

District Court erred in its statement, Booker has not objected to this error.  Therefore, it presents an issue that we need not resolve.

The mandatory minimum for Count Five was twenty-five years, not five years, because Booker had been convicted of another § 924(c) charge in an unrelated case before the District of New Jersey ("the New Jersey Case"). Consequently, his conviction in this case was his second and triggered a mandatory twenty-five year consecutive sentence, which the Court also failed to advise Booker.  The Government concedes that the District Court erred in this part of the colloquy.

[2] Booker stated that he would do a better job than a trained lawyer because he would be more aggressive in cross-examination and because he did not have ties with the prosecution.  He insisted that he would be careful with his questioning and indicated that he was aware of what he was doing.  (App. at 121-23).

Booker now appeals the judgment and sentence on two grounds. First, he argues that the District Court deprived him of his right to counsel when it failed to accurately inform him of the range of possible punishments he faced on Count Five before allowing him to proceed without counsel. Specifically, Booker avers that the District Court erred in its colloquy on Count Five by articulating an incorrect mandatory minimum, not mentioning that the twenty-five year mandatory minimum had to run consecutive to any and all other sentences and failing to inform him that the maximum punishment he faced was life imprisonment. Second, he alleges that the District Court misapplied the law when it found that Booker had waived his *Miranda* rights.[3]

## II. <u>JURISDICTION AND STANDARD OF REVIEW</u>

The District Court had jurisdiction, pursuant to 18 U.S.C. § 3231. We have jurisdiction over an appeal of the District Court's judgment and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). *See United States v. Duka*, 671 F.3d 329, 336 (3d Cir. 2011).

We exercise plenary review over a district court's finding that a defendant has knowingly and intelligently relinquished his right to counsel. *United States v. Bankoff*, 613 F.3d 358, 373 (3d Cir. 2010). "When a waiver is deemed ineffective (*i.e.*, not knowing, intelligent and voluntary), there

---

[3] At oral argument, Booker conceded that he had waived the *Miranda* issue by not presenting it to the District Court. *See United States v. Rose* 538, F.3d 175, 182 (3d Cir. 2008). Therefore, we will focus our subsequent analysis solely on the waiver of counsel issue.

is no harmless error review, and the conviction must be vacated and the case remanded for a new trial." *United States v. Jones*, 452 F.3d 223, 230 (3d Cir. 2006); *United States v. Peppers*, 302 F.3d 120, 137 (3d Cir. 2002) (characterizing an error in assessing whether a defendant may proceed *pro se* as a structural error). In determining whether a waiver is ineffective, we must "indulge every reasonable presumption against a waiver of counsel." *Buhl v. Cooksey*, 233 F.3d 783, 790 (3d Cir. 2000).

## III. ANALYSIS

"The right to counsel embodied within the Sixth Amendment carries as its corollary the right to proceed *pro se*." *Peppers*, 302 F.3d at 129.

> [S]ince a person cannot secure the right to proceed *pro se* without sacrificing the right to counsel, we have required defendants to assert the right to proceed *pro se* affirmatively and unequivocally, and we have placed on the court the burden of establishing that the defendant who does so acts voluntarily, and that he understands both the scope of the right sacrificed and the restrictions and challenges that he will face.

*Id.* As the Supreme Court has indicated, a defendant must knowingly and intelligently forgo the traditional benefits associated with the right to counsel before he can proceed in representing himself. *Faretta v. California*, 422 U.S. 806, 835 (1975). In *United States v. Moskovits*, 86 F.3d 1303 (3d Cir. 1996), we articulated a standard for determining whether a waiver of the right to counsel was knowing and intelligent:

8

> For a waiver of the right to counsel to be knowing and intelligent, which it must be in order to be valid, the defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. To ensure that a defendant truly appreciates the dangers and disadvantages of self-representation, . . . a defendant's waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, and the *range of allowable punishments thereunder*.

*Id*. at 1306 (internal quotation marks and citations omitted). If a defendant's waiver falls short of this standard, the error is structural in nature and requires us to remand the case to the lower court for a new trial. *Peppers*, 302 F.3d at 137.

While our precedent reveals no "talismanic formula" for determining when a colloquy has yielded a defective waiver, we have stated that "the District Court's inquiry must establish that the defendant understands all risks and consequences associated with his decision for self-representation, and even [if] the colloquy skips just one of the [relevant] factors, it fails to establish that the waiver is knowing, intelligent, and voluntary." *Jones*, 452 F.3d at 229, 231 (internal quotation marks and citation omitted); *see also Peppers*, 302 F.3d at 135.

In applying these standards, we previously have found constitutional error where a district court, amongst other omissions, fails to inform a defendant of the magnitude of the sentence that he could receive as a career offender and the

9

fact that a prior conviction raised the maximum punishment. *Jones*, 452 F.3d at 232.[4]

The critical question before us is whether Booker made a knowing and voluntary waiver of counsel where the District Court failed to adequately inform him of the range of possible punishments that he faced. In describing the nature of the charges and the range of possible punishments, the District Court outlined all three of the charges and summarized the possible penalties for each count as follows[5]:

---

[4] In *Jones*, we highlighted the district court's failure to properly advise a defendant of the magnitude of the sentence he could receive in light of his criminal history as one of several important issues that escaped examination. Amongst the other errors were a failure to inquire whether the defendant understood the possible defenses available to him, a failure to explain that the court could not assist him during trial and a failure to discuss the potential problems that an incarcerated defendant may face in putting on his own defense (e.g., obtaining evidence and interviewing witnesses).

[5] In *Peppers*, we outlined three skeletal requirements to reflect the obligations placed upon the district court when a defendant seeks to proceed *pro se*:

> 1. The defendant must assert his desire to proceed *pro se* clearly and unequivocally.
>
> 2. The court must inquire thoroughly to satisfy itself that the defendant understands the nature of the charges, the *range of possible punishments*, potential defenses, technical

> THE COURT: Okay. So, in count one you're charged with conspiracy to commit armed bank robbery. You are also charged with one count of committing and aiding and abetting the commission of an armed bank robbery of the Citizens Bank located in Brookhaven, Pennsylvania on June 15, 2004. You're also charged with one count of use and carrying a firearm during a crime of violence and aiding and abetting the use and carrying of a firearm in relation to a crime of violence on June 15, 2004. You do understand that that's what you're charged with in this case.
>
> DEFENDANT BOOKER: Yes, Your Honor.
>
> . . .

---

> problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved.
>
> 3. The court must assure itself that the defendant is competent to stand trial.

*Peppers*, 302 F.3d at 132 (internal quotation marks and citations omitted) (emphasis added). To provide tangible guidance on how courts should proceed in conducting a sufficient inquiry into the knowing and voluntary nature of a defendant's waiver, we have emphasized questions from the Federal Judicial Center, *Benchbook for U.S. District Court Judges* § 1.02 (4th ed. 2000). *Id.* at 136-37. Our analysis here does not disturb the utility of the suggested colloquy set forth in *Peppers*.

THE COURT: Okay. With respect to the [sic] count one, which charges you with conspiracy, if you are found guilty of that crime, then the Court may impose an assessment of $100, could sentence you to a term of up to five years in prison and could fine you as much as $250,000. Do you understand that?

DEFENDANT BOOKER: Yes, Your Honor.

. . .

THE COURT: And if you're found guilty of the crime charged in count four, then the Court must impose an assessment of $100 and you could be sentenced up to 20 years in prison. And you could be fined as much as $250,000. Do you understand that?

DEFENDANT BOOKER: Yes, Your Honor.

THE COURT: And if you're found guilty of the crime charged in count five, the Court must impose an assessment of $100; and if you have two or less prior crimes of violence, then the Court must sentence you to five years in prison. That's the five-year statutory mandatory minimum that we're talking about. And if you have more than two, then the statutory mandatory minimum will increase considerably, you understand that.

DEFENDANT BOOKER: Yes, Your Honor.

(App. at 150-53).

12

Unlike our other cases referencing this issue, which focus on the comprehensiveness of the colloquy, the District Court seemed to address all of the relevant factors to establish a proper wavier. The District Court informed Booker that his decision was inadvisable, cautioned him that it could not assist him during the trial, inquired whether he understood the possible defenses available to him, discussed the potential problems obtaining evidence and locating witnesses as an incarcerated defendant and made him aware of the Federal Rules of Evidence and the Federal Rules of Civil Procedure. The District Court also asked specific questions regarding Booker's reason for wanting to proceed *pro se* and candidly informed him of the consequences of his request. The significant shortcomings in the colloquy were the District Court's errors regarding the range of possible punishments Booker faced under Count Five ("the § 924(c) charge"). There is no dispute between the parties regarding these errors. We must now determine whether these errors invalidate Booker's waiver. We hold that they do.

Booker argues that the District Court failed to advise him of the range of potential sentences that he faced under Count Five. Specifically, Booker suggests that the District Court committed three errors in this regard. First, it failed to inform him that he faced a mandatory minimum sentence of twenty-five years imprisonment, if convicted on the § 924(c) charge. Second, it failed to advise him that the twenty-five year sentence must run consecutively to any other sentence imposed by the Court. Third, it failed to inform him of the maximum penalty if convicted – life imprisonment. While the Government acknowledges these failures, it posits that the District Court's shortcomings, viewed in the totality of the

13

circumstances, did not render Booker's waiver involuntary or unknowing.

We have not applied a specific formula for determining whether a waiver is knowing and voluntary, but we have explicitly required courts to inform a defendant of the range of possible punishments before making a decision on whether to waive counsel. *Moskovits*, 86 F.3d at 1306; *see Jones*, 452 F.3d at 233. In this case, the District Court not only misinformed Booker of the applicable mandatory minimum, it also failed to articulate a maximum sentence for Count Five so that Booker could ascertain the range of possible punishments for the offense. Instead, it simply stated the mandatory minimum and provided no information on the extent to which the Court could sentence him above the minimum. The fact that the District Court similarly failed to state that the twenty-five year mandatory minimum for Count Five was to run consecutive to any other sentence imposed by the Court, further exacerbated the error, resulting in a twenty-year understatement of the amount of mandatory imprisonment facing Booker, if convicted. Here, Booker faced a range of twenty-five years to life imprisonment if convicted of the § 924(c) charge in Count Five. Booker should have had the benefit of this information in deciding whether to waive his constitutional right to counsel.

The Government suggests that we look at the entire record and conclude that the District Court's errors did not constitutionally impair Booker's waiver. The Government notes that Booker was unequivocal in his desire to represent himself. It also posits that any error in the District Court's colloquy had no impact on Booker's decision to waive his right to counsel based on the total period of incarceration that Booker faced for various other crimes unrelated to those

14

before the District Court, and the fact that he was aware that he faced an additional thirty years of imprisonment for the current charges.

These arguments are unpersuasive for a number of reasons. First, "we [have] reject[ed] the approach of some of our sister Circuits that allows examination of the record as a whole in an attempt to divine what the defendant understands about the consequences of proceeding *pro se*." *Jones*, 452 F.3d at 232. In doing so, we acknowledged that "[a] complete, on-the-record colloquy with the defendant, one that assures he understands all the risks of proceeding without an attorney at the time he makes that choice, is in our view a significantly better way of protecting the right to counsel than the whole-record approach." *Id.* Second, the Government's suggestion that the District Court's errors were harmless or otherwise bore no impact on Booker's decision to waive his right to counsel seem to controvert our primary focus regarding the constitutionality of waiver colloquies. It is the District Court that bears the burden of ensuring that a defendant is acting voluntarily and with the appropriate knowledge before relinquishing his rights. *Peppers*, 302 F.3d at 130-31. Because we have been steadfast in requiring district courts to uphold this obligation, we see no reason to engage in an after-the-fact, subjective determination of what information did or did not influence Booker's decision.[6]

---

[6] Although our resolution of this case is grounded in our jurisprudence regarding waiver of the right to counsel, we have also espoused similar notions regarding waiver in the guilty plea context. *See Jamison v. Klem*, 544 F.3d 266, 274, 276-77 (3d Cir. 2008). In *Jamieson v. Klem*, we held that a guilty plea was not knowing and voluntary where the trial

15

Finally, because we have characterized defective waivers as structural errors, a totality of the circumstances approach seems antithetical to the idea that some errors are so fundamental that they, on their face, trigger the need for a new trial. *See McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless."); *accord United States v. Stubbs*, 281 F.3d 109, 121 (3d Cir. 2002).

In light of the District Court's failure to state the range of possible punishments, we find that Booker's waiver of counsel was not voluntary and knowing. Because such ineffective waivers are structural errors, and because the right to counsel impacts all of the charges considered at trial, we will vacate the District Court's judgment and sentence on Counts One, Four and Five and will remand the case to the District Court for a new trial.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, we will vacate the District Court's judgment and sentence for Counts One, Four and Five. We will remand the case to the District Court for a new trial.

---

court failed to advise the defendant of the mandatory minimum that he would face as a result of pleading guilty. Because we found the waiver to be defective, we vitiated the guilty plea and granted the petitioner a writ of habeas corpus.

16

United States of America v. Christopher Booker, No. 07-2835

GREENBERG, Circuit Judge, concurring

I concur with and for the most part join in Judge Greenaway, Jr.'s, well-crafted opinion, which concludes that appellant Booker is entitled to a reversal of his convictions and that there should be a new trial on all three counts of the indictment in which he was charged and for which he was convicted. In a merits disposition, however, I would limit my agreement to a reversal of the conviction on Count Five, the only count on which Booker asserts on this appeal that the District Court erred in describing the range of punishments to which he would be subject if convicted. But I nevertheless substantially join in the opinion and agree to a judgment granting Booker a new trial on all three counts because the government conceded at oral argument that if we found in favor of Booker by reason of the District Court's error in advising him of the penalties on Count Five he would be entitled to a new trial on the entire case.[1]

---

[1] In its brief the government implicitly made the same concession as it did not suggest that we should affirm the convictions on the other two counts even if we held that there was reversible error with respect to the waiver of counsel on Count Five. I also observe that Judge Greenaway, Jr.'s opinion indicates that because "Booker's waiver of counsel was not voluntary and knowing" it was a structural error and "the right to counsel impacts all of the charges considered at trial." Consequently, the opinion remands the case for a new trial on all counts. I certainly agree that the waiver of counsel had an impact on Booker's defense on all three counts but, for the

I believe that in a merits determination notwithstanding the error on the Count Five waiver proceedings the correct result would be that Booker is not entitled to a new trial on Counts One and Four for the following reasons. I start my analysis by pointing out that the District Court correctly told Booker that he faced a custodial sentence on Count One of five years and the Court sentenced him to that term on that count. Thus, Booker cannot make a meritorious complaint regarding either the proceedings that allowed him to waive counsel or challenging the length of the sentence on that count.[2] In reaching this conclusion, I recognize that if he had counsel at trial the counsel would have represented him on the entire case, but the crucial point is that he was willing to waive counsel on Count One and consequently he should not be heard to complain that he was unrepresented on that count as he knew the sentence he faced if convicted on that count. If we granted him a new trial in a merits determination on Count One by reason of the error in the waiver of counsel proceeding on Count V, we would be awarding him an unjustified collateral benefit from our finding of that error. In short, I see no reason to hold that we should recognize a spill-over effect of the error on Count Five infecting the proceedings leading to the conviction on Count One.

---

reasons that I will explain, I nevertheless do not agree that Booker is entitled to a new trial on Counts One and Four.

[2] I limit my comments with respect to the length of the sentence to the waiver of counsel proceedings. I am not addressing other bases for possible challenges to the sentence.

2

The legal situation with respect to Count Four is more complex than the circumstances surrounding Count One. When Booker sought to waive his right to counsel the Court told him that the maximum custodial term for a conviction on that count was 20 years whereas under 18 U.S.C. § 2113(d) it actually was 25 years. The Court compounded the error when it sentenced Booker to a 262-month term on the conviction on that count to run concurrently with the sentence on Count One, a period exceeding by 22 months the maximum term that the Court told him it could impose if he was convicted on Count Four. Yet for reasons that are not evident to me Booker does not seek a reversal because of the incorrect advice the Court gave him with respect to the maximum term on Count Four.[3]

When we craft an appropriate remedy for the Count IV error I think that United States v. Moskovits, 86 F.3d 1303 (3d Cir. 1996), should guide us. In Moskovits, the defendant, who was represented by counsel, was convicted at a jury trial and sentenced to a 15-year custodial term. Subsequently, the district court granted the defendant a new trial on his 28 U.S.C. § 2255 motion on the ground that his trial counsel had been ineffective. At the time the court granted the defendant the new trial it also granted his request that he be permitted to represent himself at

---

[3] Inasmuch as we are granting Booker a new trial on all three counts he has not suffered any prejudice from the circumstance that his attorney did not raise the Count Four issue on this appeal.

3

that trial. But when the court advised the defendant of the perils of waiving counsel it did not include information setting forth the range of punishments he faced if convicted at a new trial. The defendant did represent himself at the new trial and he was convicted and sentenced to a 20-year term.

On the defendant's appeal we held that there had been error in the waiver of counsel proceeding because the district court did not advise the defendant of the sentence he faced if convicted at the retrial. Yet we did not direct that he be granted a new trial as we held that "the appropriate remedy for the deprivation is to affirm the conviction but impose a fifteen-year ceiling on [his] sentence." Moskovits, 86 F.3d at 1309. In reaching our conclusion we pointed out that the court already had sentenced the defendant to a 15-year term on the offense for which he was convicted and, accordingly, the defendant was aware before the retrial that the court could impose that sentence if he was convicted again. In light of our holding in Moskovits, I conclude that in the absence of the government's concession Booker would not be entitled to a new trial on Count Four.[4]

---

[4] An equivalent remedy cannot be applied as relief for the error on Count Five because the custodial sentence of five years that the District Court told Booker could be imposed on that count was illegal as by statute a mandatory minimum sentence of 25 years to run consecutively to the other sentences being imposed was required for a conviction on that count. We hardly can direct the Court to impose an illegal sentence.

4

Rather, he would be entitled to be resentenced on Count Four to a sentence with a 20-year ceiling, the term that the Court said could be imposed when Booker waived his right to counsel on that count. As with Count I in a merits determination we should not recognize a spill-over effect infecting the proceedings on Count Four.[5]

Finally, what seems to me would be the correct result on a merits disposition here is consistent with the Supreme Court's opinion in United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 667-68 (1981), where the Court indicated that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." Though it is true that the Court also said that the correct approach has been "to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial," id. at 365, 101 S.Ct. at 668, the overarching principle in Morrison regarding "tailored" remedies is applicable here. In Moskovits, we thought that Morrison should be followed when we crafted our

---

[5] A person reading my opinion might wonder why I have written it in view of the fact that I am joining in the result of the majority opinion, which grants Booker a retrial on all three counts of conviction. The explanation is not complex. The government concedes that if the waiver of counsel is held to be invalid on Count V, Booker will be entitled to a new trial on all three counts and for that reason I agree to granting that relief.

remedy and it seems to me that the correct result on a merits determination would be to follow the <u>Moskovits</u> model here.[6]

---

[6] In <u>Morrison</u>, the Supreme Court assumed that the government's wrongful conduct in approaching the defendant violated the defendant's Sixth Amendment right to counsel but nevertheless it affirmed her conviction because the conduct did not prejudice her. Similarly the proceedings on Count Five did not prejudice Booker on the waiver proceedings on either Count One or Count Four and thus should not lead to a reversal of Booker's conviction on those counts. The possibility that Booker suffered prejudice at the trial because he did not have counsel on Counts One and Four is immaterial as the Court warned him of that possibility when he waived counsel. Thus, when he waived counsel he took the chance that he would prejudice his defense on Counts One and Four.