**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2098

_____

UNITED STATES OF AMERICA

v.

MARCELLAS HOFFMAN a/k/a Moe,

Appellant

_____

Appeal from the United States District Court for
the Eastern District of Pennsylvania
(D.C. No. 2:01-cr-00169-002)
District Judge:  Honorable Joel H. Slomsky

_____

Argued on May 21, 2025

_____

Before: PHIPPS, CHUNG and ROTH, *Circuit Judges*

(Filed: February 12, 2026)

Samantha Stern          **[ARGUED]**
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

*Counsel for Appellant*

David E. Troyer                    **[ARGUED]**
Robert A. Zauzmer
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

_____

OPINION*

_____


ROTH, *Circuit Judge*

Since Marcellas Hoffman's 2003 conviction on six counts of drug, robbery, and firearms charges, he has successfully challenged his sentence three times, thanks in large part to fortuitous changes in the law. Accordingly, he has been resentenced three times, in 2006, 2021, and 2023. Hoffman now appeals the judgment and sentence imposed at his third resentencing. Before Hoffman's second resentencing in 2021, the District Court conducted a colloquy, after which the court permitted Hoffman to represent himself at his 2021 resentencing hearing and through the successful appeal of that sentence. Hoffman argues that the court violated his Sixth Amendment rights when it allowed him to proceed pro se before his 2023 resentencing without conducting a renewed colloquy to ensure that he was "knowingly and intelligently" waiving his right to counsel.[1] Further, he argues

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Appellant's Br. 15 (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)).

2

that the colloquy he received in 2021 was inadequate to constitute a valid waiver of counsel. Because the colloquy Hoffman received in 2021 was deficient, we will vacate Hoffman's sentence and remand to the District Court for resentencing.

## I. Background

### A. Prosecution, Sentencing and First Resentencing

In 2003, a federal grand jury returned a second superseding indictment against Hoffman, charging him with six counts of drug trafficking and firearms charges.[2] At trial, the jury found Hoffman guilty of all six counts. The court sentenced him in 2004 to life imprisonment plus an additional thirty-five years in prison, which Hoffman appealed. In 2005, following the Supreme Court's decision in *United States v. Booker*,[3] we affirmed Hoffman's convictions but vacated his sentence and remanded for resentencing.[4] In 2006, the District Court resentenced Hoffman to sixty-five years (780 months) in prison, and we later affirmed that sentence on appeal.[5]

### B. Second Resentencing

Over the next decade, Hoffman lodged several unsuccessful collateral challenges to his sentence. Then, in November 2019, following the Supreme Court's decision in *United States v. Davis*,[6] we granted Hoffman's application for leave to file a successive 28 U.S.C. § 2255 motion challenging his 18 U.S.C. § 924(c)(1)(A) (Count Five) conviction

---

[2] Hoffman was first indicted in 2001, and his first trial resulted in a mistrial.
[3] 543 U.S. 220 (2005).
[4] *See United States v. Hoffman*, 148 F. App'x 122, 130–31 (3d Cir. 2005) (*Hoffman I*).
[5] *See United States v. Hoffman*, 271 F. App'x 227, 229–30 (3d Cir. 2008) (*Hoffman II*).
[6] 588 U.S. 445 (2019).

on the grounds that his predicate offense (conspiracy to commit Hobbs Act robbery) was not categorically a "crime of violence." In March 2020, through court-appointed counsel, Hoffman filed an unopposed motion before the District Court to resolve his pending § 2255 motion, which the District Court granted. As a result, his sentence and Count Five conviction were vacated, and he was set to be resentenced on the five remaining counts of conviction.

Before his second resentencing hearing, Hoffman filed a letter brief with the District Court asking to proceed pro se for purposes of his resentencing. Hoffman wrote that he "has been studying his case for 20 years now, and are [sic] very familiar with his case and are [sic] very capable of representing himself at his resentencing hearing and very familiar with the Federal Sentencing Guidelines."[7] In January 2021, the District Court held a hearing over videoconference in response to Hoffman's brief. Hoffman reiterated his desire to waive his right to counsel and expressed confidence in his ability to represent himself, stating to the court, "me having my case for 20 years . . . I'm at the point right now that I can litigate my case before the court with all the information I think the court needs to consider."[8]

The court proceeded with a colloquy that largely aligned with the model colloquy outlined in *United States v. Peppers*.[9] The District Court first asked Hoffman if he had ever studied law, to which he replied: "Yes, at the prison, working in the law library, I

---

[7] Appx191.
[8] Appx203–04.
[9] 302 F.3d 120, 136–37 (3d Cir. 2002); *see* Appx205–14.

4

represented myself in numerous cases before."[10]  The court confirmed that Hoffman had represented himself before.  The court then told Hoffman, "you are charged with very serious crimes," and asked the prosecutor to list the charges from the superseding indictment.[11]  When the prosecutor responded that he would need time to find a copy of the indictment, Hoffman told the court:  "I can quote it, your honor, if you want to hear it."[12]

The prosecutor then identified the remaining counts, but the court never confirmed Hoffman's understanding of them nor inquired into his knowledge of the U.S. Sentencing Commission's sentencing guidelines and their role in determining his sentence.  Instead, the District Court moved on to ask:  "Now, do we know what the maximum sentences he faces on each of these counts as of today, has that been established?"[13]  For each of the five counts, Hoffman's counsel recited the maximum sentences, including for using and carrying a firearm in relation to a drug felony under 18 U.S.C. § 924(c)(1)(A) (Count Three), for which defense counsel stated, "it's ten years minimum, maximum life."[14]  The court asked about the periods of supervised release that could follow the potential sentences, which Hoffman's counsel then provided, stating that for conspiracy to distribute under 21 U.S.C. § 846 (Count One) and attempt to possess with intent to distribute under § 846 (Count Two), "it's at least five years."[15]  The court also confirmed

---

[10] Appx205.
[11] Appx205–06.
[12] Appx206.
[13] Appx207.
[14] Appx209.
[15] Appx210.

5

the $100 special assessment on each count. At the end of this exchange, the court asked: "So Mr. Hoffman, you heard the sentences that you face on each of those counts?"[16] Hoffman replied: "Yes . . . some of it being contested but yes, your honor, I heard."[17] The court continued: "Those sentences you heard can be ordered to be served consecutively and obviously you can get a sentence of (technical interruption). Do you understand?"[18] Hoffman confirmed his understanding of the potential penalties.

The court proceeded to ask Hoffman about his familiarity with the Federal Rules of Evidence, and the Federal Rules of Criminal Procedure and stated that the rules are not relaxed for pro se defendants. The court explained Hoffman's right "to call witnesses at sentencing" and that "it's much easier for an attorney to gather potential witnesses, gather evidence, [and] interview witnesses."[19] The court advised Hoffman that "a trained lawyer would represent you at sentencing better than you would represent yourself, but you do have the right to represent yourself."[20] After confirming Hoffman still wished to waive his right to counsel and that he was doing so freely, voluntarily, and without improper influence, the court found that Hoffman's waiver was voluntary, that he was "competent to represent himself at the resentencing and . . . that this is what he wishes to do."[21]

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] Appx212.
[20] *Id.*
[21] Appx212–13. The District Court appointed standby counsel.

In June 2021, the District Court resentenced Hoffman to thirty-seven-and-a-half years (450 months) in prison. On appeal in February 2023, although we rejected most of Hoffman's arguments, we agreed with him "that the District Court erroneously imposed a ten-year mandatory minimum consecutive sentence on Count Three."[22] In particular, we concluded that Hoffman's sentence violated *Alleyne v. United States*,[23] where the Supreme Court had held that "[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."[24] The District Court sentenced Hoffman under the "discharge" provision of 18 U.S.C. § 924(c), which carried a ten-year consecutive mandatory minimum sentence,[25] but the jury had never been asked to find whether Hoffman had discharged a firearm.[26] Instead, the grand jury had indicted Hoffman under the "use and carry" provision of § 924(c), which carried a five-year consecutive mandatory minimum sentence,[27] and the jury never found that Hoffman had "discharged" a firearm.[28] So, in imposing a ten-year consecutive mandatory minimum

---

[22] *United States v. Hoffman*, No. 21-2178, 2023 WL 1775654, at *4 (3d Cir. Feb. 6, 2023) (*Hoffman III*).

[23] 570 U.S. 99 (2013).

[24] *Id.* at 114–15. *Alleyne* does not apply to cases on collateral review. *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014). However, after the District Court granted his § 2255 motion, Hoffman was "subject to a full resentencing and received a new judgment." *Hoffman III*, 2023 WL 1775654 at *4 n.7. Thus, at the time of his 2021 resentencing, Hoffman's case was no longer on collateral review, and therefore he was "entitled to the application of the law in effect at the time of his resentencing, which include[d] *Alleyne*." *Id.*

[25] *See* 18 U.S.C. § 924(c)(1)(A)(iii).

[26] *Hoffman III*, 2023 WL 1775654, at *4.

[27] *See* 18 U.S.C. § 924(c)(1)(A)(i).

[28] *Hoffman III*, 2023 WL 1775654, at *1 & n.1.

7

sentence, the District Court impermissibly sentenced Hoffman for discharging a firearm though no jury found that fact.[29]  On that basis, we vacated Hoffman's sentence and remanded for a third resentencing.

## C. Third Resentencing

In June 2023, the District Court held Hoffman's third resentencing hearing, where he again represented himself.  Hoffman did not request counsel (or standby counsel).  The court never asked Hoffman whether he wanted counsel, nor did it conduct a colloquy.  Based on a sentencing guideline range of thirty years (360 months) to life, the court sentenced him to 380 months, followed by eight years of supervised release.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We exercise plenary review over a district court's legal conclusion that "a defendant's waiver of counsel was knowing and intelligent"[30] and "must indulge every reasonable presumption against a waiver of

---

[29] *Id.* at *4.

[30] *United States v. Stubbs*, 281 F.3d 109, 113 n.2 (3d Cir. 2002).  Although Hoffman raised the issue that his 2021 colloquy was insufficient for the first time in the appeal of his 2023 sentence, rather than in the appeal of his 2021 sentence, Hoffman has not forfeited the issue.  *See United States v. Miller*, 594 F.3d 172, 179 (3d Cir. 2010) ("[W]hen the resentencing is de novo rather than limited, issues concerning the first sentence that were previously waived may be raised in the first instance if warranted by the second sentence.").

counsel."[31] "Because error in assessing whether a defendant may represent himself is structural, it can never be harmless."[32]

### III. Discussion

Hoffman argues that the colloquy at his 2021 resentencing was insufficient to constitute a knowing and intelligent waiver of his right to counsel. We agree.

In *Peppers*, we summarized "the scope of the court's responsibility" before allowing a defendant to proceed pro se, and explained that the court must ensure that the defendant (1) has "clearly and unequivocally" expressed his desire to represent himself; (2) "understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved;" and (3) "is competent to stand trial."[33] The second *Peppers* requirement is the one at issue in this appeal.

Before a court permits a defendant to waive his right to counsel, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"[34] A court's responsibility to conduct a penetrating inquiry into the defendant's understanding is not relaxed when a defendant seeks to proceed pro se at the sentencing

---

[31] *United States v. Jones*, 452 F.3d 223, 230 (3d Cir. 2006) (quoting *Buhl v. Cooksey,* 233 F.3d 783, 790 (3d Cir. 2000)).
[32] *Peppers*, 302 F.3d at 137.
[33] *Id.* at 131–32.
[34] *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

9

stage, as it "is a critical and often times complicated part of the criminal process that contains subtleties which may be beyond the appreciation of the average layperson seeking to represent him/herself."[35] "Thus, at sentencing, just as at trial, 'a defendant's waiver of counsel can be deemed effective only where the district court has made a searching inquiry sufficient to satisfy him[/her] that the defendant's waiver was understanding and voluntary.'"[36]

We look to the colloquy to determine whether a defendant's waiver of his right to counsel is "knowing, intelligent, and voluntary."[37] While "no scripted recital is required for this inquiry," we nonetheless "require that all of the subjects covered in the model questions set forth in *Peppers* be fully explored in the inquiry, to the extent those subjects are relevant."[38] For purposes of this appeal, the relevant questions from *Peppers* are as follows:

> 3. Do you understand that you are charged with these crimes: [state the crimes with which the defendant is charged]?
>
> 4. Do you understand that the U.S. Sentencing Commission has issued sentencing guidelines that will be used in determining your sentence if you are found guilty?
>
> 5. Do you understand that if you are found guilty of the crime charged in Count 1, the Court must impose an assessment of $___, and could sentence you to as many as ___ years in prison and fine you as much as $ ___? [Ask defendant this question for each count of the indictment or information.]

---

[35] *United States v. Salemo*, 61 F.3d 214, 220 (3d Cir. 1995).
[36] *Id.* (alteration in original) (quoting *United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982)).
[37] *Jones*, 452 F.3d at 228–30.
[38] *Id.* at 234.

6. Do you understand that if you are found guilty of more than one of these crimes, this Court can order that the sentences be served consecutively, that is, one after another?[39]

The District Court's colloquy was deficient in several important respects. In contrast to Question #3 of the *Peppers* model colloquy, the court did not ask whether Hoffman understood the crimes for which he was charged. Instead, the court informed Hoffman that he was "charged with very serious crimes" and asked the prosecutor to list the charges.[40]

The court entirely skipped Question #4.[41] The Government contends that "[t]here is no question that Hoffman knew the Guidelines would apply in his case," and quotes Hoffman's own words from his letter brief that he was "very familiar with the Federal Sentencing Guidelines."[42] However, a defendant's statements outside of the colloquy do not free a district court of its obligation to conduct "[a] complete, on-the-record colloquy with the defendant, one that assures he understands all the risks of proceeding without an attorney at the time he makes that choice."[43]

---

[39] *Peppers*, 302 F.3d at 136.
[40] Appx205.
[41] *See Peppers*, 302 F.3d at 136.
[42] Opp. Br. 32; *see also* Appx191.
[43] *United States v. Booker*, 684 F.3d 421, 428 (3d Cir. 2012) (alteration in original) (quoting *Jones,* 452 F.3d at 232). We have, on limited occasions, looked beyond the colloquy to determine whether a defendant's waiver of counsel was knowing and intelligent. *See United States v. McFadden*, 630 F.2d 963, 972 (3d Cir. 1980). In *McFadden*, we rejected the defendant's argument that he was deprived of his Sixth Amendment right to counsel where he: (1) "employ[ed] complaints against counsel as a dilatory tactic in order to postpone trial, raise a Speedy Trial Act claim, or await possible death or unavailability of prosecution witnesses"; (2) refused to accept the advice of two court-appointed criminal defense lawyers; and (3) was informed by a magistrate judge of

11

The District Court's discussion of the penalties was also lacking. The court departed from the *Peppers* framework by not confirming Hoffman's understanding of the penalties count by count and instead asking his appointed counsel to recite the maximum sentences for each count. The court did not inquire into Hoffman's understanding of each count's possible penalties nor provide the amounts of any potential fines. The court also committed three errors in the recitation of the penalties, most notably by inaccurately stating that Hoffman's sentences on all counts "can be ordered to be served consecutively" when his sentence for Count Three was *required* to be served consecutively to his sentences for all other counts.[44] The other two errors arose from Hoffman's counsel, who (at the court's direction) stated that the statutory range on Count Three was "ten years minimum, maximum life," even though *Alleyne* later clarified that the mandatory minimum sentence was only five years' imprisonment, as no jury found that Hoffman discharged the firearm.[45] Counsel also misstated the minimum supervised release on Counts One and Two as "at least five years," when it was, in fact, eight years.[46] The District Court did not correct counsel's misstatements.

---

the "nature of the charges and the range of punishment" on two prior occasions. *Id.* We have considered whether Hoffman's case might fall within a *McFadden* exception but have decided that his circumstances are not so extraordinary as to warrant such a carveout here. *See Jones*, 452 F.3d at 232 ("A complete, on-the-record colloquy with the defendant . . . is in our view a significantly better way of protecting the right to counsel than the whole-record approach.").

[44] Appx210; *see also* 18 U.S.C. § 924(c)(1)(D)(ii).

[45] Appx209.

[46] Appx210.

The Government denies that Hoffman "was not adequately advised of the potential penalties for each count" because "[i]n essence, Hoffman was told that he faced multiple possible consecutive sentences of life imprisonment . . . [t]hat surely provided him with the information he needed to intelligently assess whether to represent himself."[47] The Government also notes that "such a sentence had in fact been imposed on [Hoffman] earlier," referring to his original 2004 sentence of life imprisonment plus 35 years.[48] However, outside of rare circumstances, "we [have] reject[ed] the approach of some of our sister Circuits that allows examination of the record as a whole in an attempt to divine what the defendant understands about the consequences of proceeding *pro se*."[49]

The Government also characterizes the District Court's error in failing to correct counsel's misstatement about the minimum supervised release term on Counts One and Two as "minor misinformation" that Hoffman "does not claim . . . played any part whatsoever in his decision whether or not to proceed pro se."[50] However, we rejected a similar argument in *United States v. Booker*,[51] writing that "the Government's suggestion that the District Court's errors were harmless or otherwise bore no impact on Booker's decision to waive his right to counsel seem to controvert our primary focus regarding the constitutionality of waiver colloquies," namely, that "[i]t is the District Court that bears the

---

[47] Opp. Br. 27.
[48] *Id.*
[49] *Booker*, 684 F.3d at 428 (alterations in original) (quoting *Jones,* 452 F.3d at 232).
[50] Opp. Br. 30 n.8.
[51] 684 F.3d 421 (3d Cir. 2012).

burden of ensuring that a defendant is acting voluntarily and with the appropriate knowledge before relinquishing his rights."[52]

Finally, the Government argues that *Peppers'* model colloquy "provides only a 'useful framework,'" and that "there is 'no talismanic formula for the court's inquiry,' as the only fundamental question is whether 'the defendant's waiver of counsel is knowing and understanding as well as voluntary.'"[53] However, since the District Court failed to confirm Hoffman's understanding of the charges against him, inquire into his familiarity with the sentencing guidelines, and accurately and thoroughly explain the full range of potential penalties, we cannot say that Hoffman's waiver of counsel in 2021 was "knowing and understanding" as to the risks of self-representation at sentencing.[54]

## IV. Conclusion

Because the District Court's 2021 colloquy was inadequate, we will vacate Hoffman's sentence and remand for the court to conduct a proper colloquy and resentence Hoffman.

---

[52] *Id.* at 428.
[53] Opp. Br. 23 (quoting *Peppers*, 302 F.3d at 130–32, 136–37).
[54] *Peppers*, 302 F.3d at 130.

*United States v. Hoffman*, No. 23-2098
PHIPPS, *Circuit Judge*, dissenting.

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court interpreted a criminal defendant's Sixth Amendment right to counsel to include the right to self-representation. *Id.* at 818; *see also* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). But even after a criminal defendant who is competent for trial makes a clear and unequivocal request to proceed *pro se* in a timely manner, self-representation does not necessarily follow. *See Faretta*, 422 U.S. at 835; *see also Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 162 (2000) (explaining that "most courts" require a criminal defendant to request self-representation "in a timely manner"); *Godinez v. Moran*, 509 U.S. 389, 399–402 (1993) (differentiating competency to stand trial and competency for waiving the right to counsel). Rather, the criminal defendant must be "made aware of the dangers and disadvantages" of self-representation, *Faretta*, 422 U.S. at 835 (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)); demonstrate a minimal level of mental competency "to conduct trial proceedings," *Indiana v. Edwards*, 554 U.S. 164, 178 (2008); and choose self-representation "knowing[ly], voluntar[ily], and intelligent[ly]," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).[1]

In evaluating whether those partially overlapping requirements are satisfied, the Supreme Court has looked to the totality of the circumstances. *See Edwards v. Arizona*, 451 U.S. 477, 482 (1981) ("[A] knowing and intelligent relinquishment . . . depends in each case 'upon the particular facts and circumstances surrounding that case, including the

---

[1] A valid waiver of the right to counsel is also not absolute; it is conditioned on a criminal defendant's preservation of "the dignity of the courtroom" and "compl[iance] with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 834 n.46; *see also McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984) (conditioning a defendant's "Sixth Amendment right to conduct his own defense" on whether "he is able and willing to abide by rules of procedure and courtroom protocol").

background, experience, and conduct of the accused.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))).[2] Indeed, the Supreme Court has made clear that it has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88.

This Court, however, has developed a strict-colloquy method for assessing a criminal defendant's request for self-representation. Under that approach, not used by our sister circuits,[3] upon a criminal defendant's clear and unequivocal request to proceed *pro*

---

[2] *See also Tovar*, 541 U.S. at 88 (emphasizing that "[t]he information a defendant must possess in order to make an intelligent election[] . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding"); *Faretta*, 422 U.S. at 835 ("The record affirmatively shows that [the criminal defendant] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will.").

[3] *See, e.g.*, *United States v. Jones*, 778 F.3d 375, 389 (1st Cir. 2015) ("We will uphold a waiver of the right to counsel as long as the record supports a reasoned conclusion that the defendant was fully apprised of his right to counsel and of the disadvantages he would encounter should he elect to proceed pro se."); *Dallio v. Spitzer*, 343 F.3d 553, 563 (2d Cir. 2003) ("[W]e have[] . . . also rejected rigid waiver formulas or scripted procedures[] . . . and emphasized that 'knowing and intelligent' waivers depend on the totality of the circumstances." (quoting *United States v. Fore*, 169 F.3d 104, 108 (2d Cir. 1999))); *United States v. Roof*, 10 F.4th 314, 359 (4th Cir. 2021) (relying not "on the *Faretta* colloquy alone" and instead conducting a "review of 'the record as a whole' (quoting *United States v. Singleton*, 107 F.3d 1091, 1097 (4th Cir. 1997))); *United States v. Sterling*, 99 F.4th 783, 794 (5th Cir. 2024) ("[A] district court must consider the totality-of-circumstances in determining whether a defendant has properly waived his right to counsel." (quoting *United States v. Virgil*, 444 F.3d 447, 453 (5th Cir. 2006))); *King v. Bobby*, 433 F.3d 483, 492 (6th Cir. 2006) ("[I]t is a reasonable application of *Faretta* and *Von Moltke* to look at the whole record, not just the colloquy immediately before the signing of the waiver, to determine if it was knowing and intelligently entered."); *United States v. Underwood*, 88 F.4th 705, 709 (7th Cir. 2023) ("We consider four factors when evaluating whether a defendant knowingly and voluntarily waived the right to counsel, considering the record as a whole."); *United States v. Heard*, 951 F.3d 920, 928 (8th Cir. 2020) ("This court 'will uphold a waiver of counsel absent specific warnings when the record as a whole demonstrates that the defendant knew and understood the disadvantages of self-representation.'" (quoting *Fiorito v. United States*, 821 F.3d 999, 1006 (8th Cir. 2016))); *United States v. Schaefer*, 13 F.4th 875, 887 (9th Cir. 2021) ("[T]he focus of our analysis . . . is whether 'a fair reading of the record as a whole' indicates that the defendant 'understood the dangers and disadvantages of self-representation.'" (quoting *United States v. Audette*, 923 F.3d 1227, 1235 (9th Cir. 2019))); *United States v. Hansen*, 929 F.3d 1238, 1251 (10th Cir. 2019) ("[O]ur cases have repeatedly stressed that the knowing and intelligent nature of the waiver of the right to counsel turns on the 'totality of the

*se*, a trial judge may then engage in – at a minimum – the fourteen-question colloquy articulated in *United States v. Peppers*, 302 F.3d 120, 136 (3d Cir. 2002). *See United States v. Jones*, 452 F.3d 223, 232, 234 (3d Cir. 2006); *see also United States v. Booker*, 684 F.3d 421, 426 (3d Cir. 2012).[4]  If there is any infirmity with the colloquy, then the colloquy cannot, by itself, justify a criminal defendant's self-representation.  *See Jones*, 452 F.3d at 234; *see also Henderson v. Frank*, 155 F.3d 159, 166 (3d Cir. 1998) (concluding that a colloquy skipping "just one" question was deficient (citing *United States v. Welty*, 674 F.2d 185, 188–89 (3d Cir. 1982))).  In essence, the strict-colloquy method operates as a safe harbor: if a trial judge conducts a flawless colloquy, then the requirements necessary for evaluating a request for self-representation have been met.  *See Jones*, 452 F.3d at 234.

Perhaps because of the greater certainty associated with a safe harbor, this Court has expressed a preference for the strict-colloquy approach.  *See Gov't of Virgin Islands v. James*, 934 F.2d 468, 473 (3d Cir. 1991) ("[A] colloquy between the defendant and trial judge is the preferred method of ascertaining that a waiver is voluntary, knowing and intelligent."); *see also Buhl v. Cooksey*, 233 F.3d 783, 800 (3d Cir. 2000); *United States v. Salemo*, 61 F.3d 214, 221 (3d Cir. 1995); *Welty*, 674 F.2d at 191.  Even so, this Court has

---

circumstances, including the background, experience, and conduct of the defendant.'" (quoting *United States v. Williamson*, 806 F.2d 216, 220 (10th Cir. 1986))); *United States v. Stanley*, 739 F.3d 633, 646 (11th Cir. 2014) (looking to "the whole record" to ascertain whether a criminal defendant's waiver of the right to counsel was valid); *United States v. Wright*, 923 F.3d 183, 190 (D.C. Cir. 2019) (holding that the "*Faretta* colloquy" was not "defective" because "[t]he content of this colloquy 'lies within the district court's discretion so long as the court addresses the core elements of the defendant's concern'" (quoting *United States v. Hall*, 610 F.3d 727, 740 (D.C. Cir. 2010))).

[4] *But cf. Patterson v. Illinois*, 487 U.S. 285, 299–300 (1988) (requiring less rigorous warnings of the risks of self-representation at the pre-trial stage than those needed to elect self-representation during trial).

3

not interpreted the strict-colloquy approach as replacing the totality-of-the-circumstances approach established by the Supreme Court.[5]

In this case, the Majority Opinion, correctly in my view, identifies imperfections with the colloquy that the District Court conducted with Marcellas Hoffman after he requested to represent himself at his sentencing hearing. And because the colloquy was not flawless, I agree that the strict-colloquy approach does not provide a safe harbor for affirming the District Court's granting of Hoffman's request.

I respectfully dissent from the Majority Opinion, however, because it treats the strict-colloquy approach as the exclusive method for ascertaining the facts needed to determine whether a criminal defendant may proceed *pro se*. That is not the law. It has always been permissible to consider the totality of the circumstances in assessing a criminal

---

[5] *See James*, 934 F.2d at 473–74 (explicitly declining "to require a detailed list of advice such as that mandated for guilty plea proceedings" and observing that the "question of whether a waiver is voluntary, knowing and intelligent[] 'depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused'" (quoting *Piankhy v. Cuyler*, 703 F.2d 728, 730 (3d Cir. 1983))); *see also United States v. Taylor*, 21 F.4th 94, 102–03 (3d Cir. 2021) ("[W]e have recommended that [a trial court] structure its *Faretta* inquiry around a set of model questions. . . . That said, we do not require all trial courts to ask these questions – 'there is no talismanic formula for the court's inquiry.' Indeed, we recognize that a court may employ tools other than direct questioning if the circumstances call for them." (quoting *Peppers*, 302 F.3d at 135)); *United States v. Thomas*, 357 F.3d 357, 364 (3d Cir. 2004) ("Although in our opinion in [*Peppers*] we listed a series of questions that we believe would provide a 'useful framework' in order to ascertain whether a defendant understands the risks of proceeding *pro se,* we did not overrule our previous discussion, nor did we mandate a certain 'script,' especially in situations where we were confident that the defendant was cognizant of the potential problems he would face."); *United States v. Cocivera*, 104 F.3d 566, 569–70 (3d Cir. 1996) (conducting a "careful review of the record" and determining that the defendant's waiver was "knowing [and] voluntary" because the District Court "engaged in a detailed colloquy" and the defendant was "educated and articulate"); *Gov't of Virgin Islands v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995) ("There is no rote speech that the court must recite. Rather, the proper inquiry depends on the particular facts and circumstances of the case, including the background, experience, and conduct of the accused.").

defendant's request for self-representation. *See Tovar*, 541 U.S. at 88; *Faretta*, 422 U.S. at 835; *Zerbst*, 304 U.S. at 464.

And upon consideration of the totality of the circumstances, there is no question that Hoffman was qualified to represent himself at the sentencing hearing and that he requested to do so knowingly, voluntarily, and intelligently. Hoffman had studied his case for twenty years, and he understood the crimes with which he was charged – he offered to recite the superseding indictment from memory. In addition, Hoffman had familiarity with the Sentencing Guidelines; indeed, while representing himself in a prior appeal of his sentence, Hoffman persuaded this Court to vacate part of his sentence and remand for resentencing. *United States v. Hoffman*, 2023 WL 1775654, at *4 (3d Cir. Feb. 6, 2023). Thus, based on the complete record, Hoffman was minimally competent to proceed *pro se*, and he made a knowing, voluntary, and intelligent choice to do so. Consequently, the District Court did not err in granting Hoffman's request to proceed *pro se*, and I would affirm the judgment of the District Court.